The Dundee Chemical Works, appellant,

*v.*

Phœbe A. Connor, administratrix &c., respondent.

1. A contract will not be set aside merely because of a disparity, though great, between the parties negotiating it, in respect of education, business training and ability. When such disparity appears the contract will be scrutinized with extreme care, but will not be avoided unless the circumstances show that it was procured from the weaker party by artifice or deception, or by undue pressure or importunity inducing action without advice or time for deliberation, or by advantage taken of distress, or for no or an inadequate consideration, or it otherwise appears to be inequitable.

2. A release, negotiated by parties unequally matched, will not be set aside when it appears that, in procuring it, no artifice or deception was practiced; that the weaker party was urged by the other to seek advice and take time for deliberation, but declined to do so, and no importunity induced precipitate

or unadvised action; that said party knew that the release was sought to protect against any claim on a liability which was denied, and that the object of the transaction was to purchase immunity from litigation, and bargained with an intelligent comprehension of that purpose; and that a consideration was rendered, the inadequacy of which was not made to appear.

On appeal from a decree advised by Vice-Chancellor Bird, who filed the following conclusions:

Mrs. Connor, as the administratrix of her late husband, asks for an injunction restraining the defendant from pleading and offering in evidence, in an action at law now pending, which she has commenced to recover damages from the defendant for the death of her husband, a release given by the complainant under her hand and seal. Her husband was in the employ of the defendant as lead-burner, and was very skillful in his trade. While engaged in their business, on the 1st day of September, 1887, he was killed.

[Here follows a statement of facts.]

\*     \*     \*     \*     \*     \*     \*     \*     \*

Mrs. Connor asks to have the use of this release, in the action at law, restrained, because it was procured by fraudulent means or devices.

To procure this release, I do not find that any willful misrepresentations were made by Mr. Johnson, or that any arts whatever were used by him, to mislead Mrs. Connor. Mrs. Connor and Mrs. Ellis both say that he told them that he made the offer as a matter of kindness, but Mr. Johnson very emphatically denies using any such expression. He says that he proposed a settlement, and nothing else. This, however, I do not think at all material.

It seems to me, that when the whole case is attentively read and considered, it will very clearly appear that the release ought not to stand in the way of the action at law. Laying entirely aside the great bereavement from which Mrs. Connor was then suffering, every one who saw the contracting parties on the witness-stand and heard their statements, would at once be impressed most forcibly with the very great disparity between them, in

37

business experience, in mental capacity or natural endowments, in intellectual training and in force of character. Mrs, Connor is not only dull by nature, but her education is exceedingly limited; and as to experience in the affairs of trade or business, she has had none. She is of the stature of a woman, but the merest child in the knowledge of the ways of mankind in all of their dealings with each other, while Mr. Johnson is at the extreme opposite of this, and, besides being trained to business, he is an able and experienced lawyer of the highest repute for ability and fair dealing. All men rejoice in these virtues and glory in the fact that they are estimated so highly and bear so much weight in all human transactions. But this is the ascendency and the advantage which, when exerted, whether by design or not, the law regards as undue influence and protects the weak against with the most zealous care.

But in this case these inestimable qualities give Mr. Johnson a tremendous advantage over Mrs. Connor; and the circumstances all conspire, without the slightest design on his part, to enable him to impose his own terms, and to induce her to accept whatever he might say as in all respects true. See *Troxell* v. *Silverthorn, 18 Stew. Eq. 330.*

Notice the circumstances: Mrs. Connor was poor, living in the lowly walks of life; Mr. Johnson, a citizen and a lawyer of distinction, calls upon her in the midst of her deepest distress and makes the kindliest suggestions respecting the burial of her dead husband. He sends word to her by a friend that he would like to see her at his office, and again, requests the surrogate to ask her to call. And when she called, he told her that if the offer which he made is accepted, he would see that the costs of the letters of administration would be paid by the company.

When all these considerations are brought in review, it will be most readily understood why it was that she at once accepted, without the slightest questioning, the statement of Mr. Johnson, that the defendant was not responsible, but that if any one was it was the Forcite Powder Company, which owned the tank which had burst and killed Mr. Connor, and acted upon it in the most implicit confidence. This acceptance of his statement

is shown by the fact, that when he told her to go and consult her friends, she declined to do so.   She did not consult any further ; for believing, as she did, that what he said was true, that is, that she had no legal claim upon the defendant company, it was most natural for her to accept what she could get from them, as a gift as she understood it, although Mr. Johnson did not so understand it.

I have no doubt that Mr. Johnson meant to express only his opinion when he said that the company was not liable, but Mrs. Connor accepted it as a fact.   Hence she acted upon the belief that she had no right to an action against the defendant.   This being so, I do not see how a court of equity can regard the release as binding upon Mrs. Connor.   I think that the injunction heretofore granted should be made perpetual, with costs.

*Mr. John W. Griggs,* for the appellant.

*Mr. John T. Dunn,* for the respondent.

The opinion of the court was delivered by

MAGIE, J.

The controversy in this cause relates to a general release given by respondent, as widow and administratrix of William A. Connor, deceased, to the appellant, a corporation known as the Dundee Chemical Works.

After the release, respondent brought an action in the supreme court to recover from appellant damages for the death of her husband, which she charged to have been occasioned by its negligence.   The release was pleaded as a defence to that action.   A replication, charging that it had been procured by fraud, was, on demurrer, held to be bad, because the fraud had been insufficiently alleged and because the statutes permitting fraud to be set up at law in respect to sealed instruments, did not extend to a case where such an instrument is interposed as a defence in bar.   *Connor* v. *Dundee Chemical Works, 21 Vr. 257.*

Respondent, without reviewing the rulings in that case, filed her bill in the court of chancery, and, upon charges of fraud,. prayed for a decree that the release should be surrendered and the appellant should be enjoined from setting it up or relying on it in the action at law. Upon the bill and accompanying affidavits a preliminary injunction was allowed as prayed. The cause having been brought to hearing, the injunction was made perpetual by a final decree.

The appeal is taken from that decree.

The bill charged that the release was obtained by the fraud of an officer of the appellant company, who is also a member of the bar. The specific charge was, that at the time the release was made, the confidential relation of client and attorney existed between respondent and Mr. Johnson, the officer and lawyer in question, in respect to her claim for damages for the death of her husband, and that the release was obtained through the influence which that relation had created. The affidavits of respondent and of a friend who was present at the execution of the release, supported the charges of the bill in this respect. The answer and accompanying affidavits met the charge with a specific and complete denial. On the trial of the cause, respondent and her friend were called in support of the bill. It is not enough to say that their testimony does not agree with or support their affidavits. The absolute falsity of the charge, that the confidential relation of attorney and client existed, is, I think, demonstrated by their own evidence. No explanation of this discrepancy between the affidavits and the testimony is discoverable in the evidence or has been suggested in the argument.

Not only does the evidence for respondent negative the existence of that confidential relation which was particularly charged in the bill and affidavits, but the case is barren of anything to justify the inference that any confidential relation whatever existed ; for such a relation is not to be inferred from the fact that Johnson visited respondent on hearing of the sudden death of her husband, who had been long a trusted employe of his company, nor from the fact that he offered in behalf of the company to pay, and did pay, the funeral expenses. Nor can such.

Dundee Chemical Works *v.* Connor.

·an inference be drawn from the fact that Johnson sent word to respondent that he would go with her to the surrogate's office when she should go to get letters of administration, if she ·desired, for it does not appear that she received the message, and it does appear that she did not accept the offer.

No confidential relation between the parties having been ·shown, there is no room for a presumption that the release was the product of an undue influence.

Such was the view taken below, yet the learned vice-chancellor reached the conclusion, on the proofs, that an undue influence had been exerted by Johnson upon respondent to induce her to execute the release. Such undue influence he deemed to have been exerted, as it were, unconsciously, and to be inferable from two circumstances, viz., the disparity between respondent and Johnson in business capacity, and the fact that Johnson told respondent in the course of the negotiations that his company was not liable for the death of her husband, but that if anybody was it was the Forcite Powder Company, a corporation which, it seems, owned the tank the explosion of which killed respondent's husband.

A careful examination of the case has not enabled me to discover any other ground for imputing undue influence, and the circumstances relied on below do not, in my judgment, justify such an imputation.

Doubtless the vice-chancellor, who saw respondent on the witness-stand, correctly describes her when he says that she was ·dull by nature, of exceedingly limited education, and without experience in the affairs of trade or business. Mr. Johnson is known to be a skilled lawyer of reputation and ability. In a certain sense they could not deal on a footing of equality. But since respondent plainly had legal capacity to make this contract, the disparity between her and Johnson cannot, of itself, determine the question now under consideration. For courts will not weigh the relative skill of parties to contracts, and merely from ·a disparity between them, avoid a contract obtained from the less ·skillful party.

It is only when the contract is got from the illiterate, the weak-minded or distressed party, under circumstances which indicate that it was procured by artifice or deception, or by undue pressure and importunity inducing action without advice or time for deliberation, or by advantage taken of distress, or for no or an inadequate consideration, or is otherwise inequitable, that it will come under condemnation. Therefore, when a disparity of capacity appears, courts should scrutinize the transaction with extreme care. But if, when so examined, there is disclosed no ground of objection, except such disparity, the contract cannot be impeached.

As there evidently was a great disparity between the parties who negotiated the release in question, let us examine the circumstances with a view to determine whether they exhibit any such grounds for condemning this release.

What occurred before the day on which the release was executed need not be considered, because no negotiation looking to such a release took place until that day.

The transaction of that day, by the clear weight of evidence, was this : Johnson had sent for respondent, and in the presence of her friend, Mrs. Ellis, he told her that he had understood that she intended to bring suit against his company. She replied that she " did not know about that," and either she or her friend, or both, told Johnson that such a suit had been talked of by a brother of deceased. Johnson then told her that he did not consider his company liable, and if she intended to bring suit, he did not wish to talk with her about it, but if she was willing to settle, he was willing to pay something rather than to have a suit.

From this I think it evident, that respondent knew of her right to recover damages from appellant if liable for the death of her husband, and also that appellant's representative denied such liability but was willing to treat for immunity from litigation.

Negotiations were then begun. Johnson stated the terms which he proposed, and she obviously understood them. He advised her to seek advice and not to act at once. but to take time for consideration. She left his office, returned, accepted the

offer, executed the release, and for nearly a year received the payments stipulated for. That, when respondent executed the release, she understood it to be in settlement of her right to sue appellant and not the mere allowance of a gratuity, I conceive to be settled, by the terms of the instrument and by the evidence of Johnson and Surrogate Pell, which must be accepted as overweighing the evidence of respondent and Mrs. Ellis, whose credit as witnesses is seriously affected by the unexplained contradiction between their affidavits and their testimony, to which attention has been previously called.

From the whole evidence I think it clear, that not only (as was held below) was there no proof of willful misrepresentations or the use of arts to deceive respondent, but also that nothing occurred tending, unconsciously, to misrepresentation or deception. She knew that she was dealing with the company, which denied liability but was willing to "buy peace." She treated on that basis and consummated the bargain with a sufficiently intelligent comprehension of its nature and consequences.

That Johnson asserted the non-liability of the company cannot avail in determining the question now under consideration. Such a statement, if known to be false, would have shown willful deception and fraud. Johnson's testimony shows that he believed the statement to be true, and there is nothing to show it was not true. Although the case presented an issue on appellant's liability, respondent not only forbore to offer any testimony to establish liability, but when appellant offered to prove the contrary, her counsel objected, and on such objection the offer was overruled.

Nor can I find any ground for declaring this release to be the outcome of what the books—rather vaguely—call " oppression." Respondent was not, by importunity and pressure, induced to execute it precipitately or without being afforded time for deliberation or an opportunity to seek advice. On the contrary, Johnson suggested to and urged upon respondent, delay for consideration and the seeking of advice. When she declined such suggestions and proceeded to execute the release, she cannot now charge him with taking advantage of her in this respect. Nor

was respondent induced to her act by the pressure of any necessity of which advantage was taken. Although her husband had recently died, it appears that his life was insured for a sum sufficient to relieve her from the apprehension of immediate want.

In the absence of proof of appellant's liability, it cannot be said that the consideration was inadequate.

Had the bargain been on the basis of an admitted liability, it was not without consideration, as was the release passed· on in *Troxell* v. *Silverthorn, 18 Stew. Eq. 330*, but a consideration was offered and accepted.

But the .bargain was made on the basis of a purchase of immunity from prosecution on a liability not admitted but denied. The subject does not admit of an accurate estimate of what is proper compensation. It is sufficient to say, that there is nothing in the case to show that the consideration agreed on was not entirely adequate.

Upon this review of the case I do not find that the release has been successfully attacked. Appellant ought not, therefore, to be restrained from making use ·of it as a defence in the action at law.

I shall vote to reverse the decree, and for a decree dismissing the bill of complaint, with costs to appellant.

*For affirmance*—THE CHIEF-JUSTICE, VAN SYCKEL, BROWN, CLEMENT—4.

*For reversal*—DEPUE, DIXON, GARRISON, MAGIE, REED, SCUDDER, COLE, SMITH—8.