JOSEPH MASSARI, CONNIE MASSARI, VITO MASSARI AND MARY MASSARI, A CO-PARTNERSHIP DOING BUSINESS UNDER THE NAME OF MASSARI BROTHERS MACHINE COMPANY, PLAINTIFFS-RESPONDENTS, v. CHARLES S. EINSIEDLER, DEFENDANT-APPELLANT.

CHARLES S. EINSIEDLER, PLAINTIFF-APPELLANT, v. JOSEPH MASSARI, CONNIE MASSARI, VITO MASSARI AND MARY MASSARI, A CO-PARTNERSHIP DOING BUSINESS UNDER THE NAME OF MASSARI BROTHERS MACHINE COMPANY, DEFENDANTS-RESPONDENTS.

Argued January 8, 1951—Decided February 5, 1951.

*Mr. Joseph Weintraub* argued the cause for the appellant (*Messrs. McGlynn, Weintraub & Stein,* attorneys).

*Mr. Arthur L. Abrams* argued the cause for the respondent.

The opinion of the court was delivered by

BURLING, J.   This appeal is from a judgment of the Superior Court, Appellate Division, affirming a judgment of the Superior Court, Law Division, dismissing Charles S. Einsiedler's petition in the first captioned cause and his complaint in the second captioned cause in both of which proceedings Einsiedler sought reformation, together with incidental relief, of a contract upon which suit had been originally brought by the Massaris against Einsiedler and in which judgment had been entered in favor of the Massaris and against Ein-

siedler. The cause was certified by this court pursuant to a petition therefor by Einsiedler.

The litigation between the parties leading to the present appeal has been extensive and the recital of the procedural background will be limited to such facts as are necessary for a determination of the question presently before us.

On September 17, 1948, the Massaris commenced suit in the Superior Court, Law Division, to collect the unpaid balance of the purchase price alleged to be due under a contract between the parties, dated September 16, 1946, whereby the Massaris agreed to sell a business owned by them and Einsiedler agreed to purchase the same on a deferred payment plan as therein stated, the full purchase price being payable within two years. Summary judgment was entered by the trial court in favor of the Massaris, pursuant to a motion therefor. In that suit, Einsiedler's answer admitted the balance due under the contract but pleaded a loan agreement and a security trust agreement, both dated September 25, 1946. The contract dated September 16, 1946, was executed by the Massaris and Einsiedler, whereas the two subsequent agreements were executed solely by Einsiedler. The purport of the latter two agreements was to require the Massaris to accept shares of stock, at their book value, of a corporation to be formed by Einsiedler, in satisfaction of the unpaid balance of the purchase price of the business so sold in the event of a breach by Einsiedler of the contract of sale, dated September 16, 1946. The trial court held that the security trust and loan agreements, executed solely by Einsiedler, were inadmissible in evidence to vary the terms of payment as contained in the contract of sale. Einsiedler then filed a petition and supplement thereto seeking to compel the Massaris to accept the aforementioned stock at book value in reduction of the judgment. The petitions were dismissed by the Law Division. On appeal by Einsiedler, the order of dismissal and the summary judgment were affirmed by the Appellate Division. *Massari v. Einsiedler,* 3 *N. J. Super.* 40 (*App. Div.* 1949); certification was denied, *Massari v. Einsiedler,* 1 *N. J.* 604 (1949).

Einsiedler, in the present proceedings, sought relief by way of reformation, urging that the true agreement between the parties was that expressed by the contract of September 16, 1946, as modified by the loan and security agreements. A petition was filed with the Superior Court, Law Division, and a complaint was filed in the Chancery Division in both of which proceedings reformation and incidental relief was sought. The complaint in the Chancery Division was trans-   ♦ ferred to the Law Division, where, by subsequent amendment, Einsiedler sought restitution and damages for breach of contract as reformed. These several actions instituted by Einsiedler were consolidated and, on motion of the Massaris, were dismissed by the Law Division. The judgment was affirmed by the Superior Court, Appellate Division. Certification was granted by the Supreme Court to review the judgment of the Appellate Division pursuant to a petition therefor by Einsiedler.

The primary question to be determined is whether the disposition of the former proceedings is *res judicata* of the right of Einsiedler to seek reformation of the contract of sale and to enforce it as so reformed. The question must be answered in the affirmative.

The litigation in this cause was commenced after the effective date of the Judicial Article of the 1947 Constitution, September 15, 1948, *Art.* XI, *Sec.* IV, *par.* 14, 1947 *Constitution,* and the disposition of the question involved must be determined by a reference to the 1947 Constitution and the rules promulgated by the Supreme Court pursuant thereto.

One of the designs of the Judicial Article of the 1947 Constitution was to facilitate and expedite the hearing of causes by disposing of all matters, whether legal or equitable, arising in a controversy in one trial and thus avoid multiple trials of the same case. *Article* VI, *Sec.* III, *paragraphs* 3 and 4 of the *Constitution* provides:

"3. The Superior Court shall be divided into an Appellate Division, a Law Division, and a Chancery Division. Each division shall have such Parts, consist of such number of Judges, and hear such causes, as may be provided by rules of the Supreme Court.

"4. Subject to rules of the Supreme Court, the Law Division and the Chancery Division shall each exercise the powers and functions of the other division when the ends of justice so require, and legal and equitable relief shall be granted in any cause so that all matters in controversy between the parties may be completely determined."

We have had occasion in previous cases to so consider the pertinent provisions of the Judicial Article of the Constitution and the objective sought to be attained thereby by the framers of the Constitution. In *Steiner v. Stein*, 2 *N. J.* 367, 377 (1949), Chief Justice Vanderbilt said:

"Were the trial judge in whichever division he is sitting not to hear the entire case once he has assumed jurisdiction, all of the confusion and waste of judicial effort which the framers sought to eliminate would reappear. The trial of an entire case before the same judge conforms, moreover, to the practice in many jurisdictions, including the federal courts."

Again in *State v. Jones*, 4 *N. J.* 374, 383 (1950), Chief Justice Vanderbilt said:

"We conceive it to be quite impossible for a litigant to go on to trial in one Division of the Superior Court and then assert, after judgment, a right to be heard, except on appeal, in another. To hold otherwise would be to revive one of the worst defects of the old order and to do violence to both the letter and the spirit of the new Constitution."

See also *O'Neill v. Vreeland*, 6 *N. J.* 158 (1951).

■ The rules of court, promulgated under the authority of the Constitution are designed to implement the purpose and objective clearly expressed in the Constitution. *Rule* 3:12–2 provides, *inter alia,* that "Every defense, legal or equitable, in law or fact, to a claim for relief in any pleading * * * shall be asserted in the answer thereto * * *." *Rule* 3:12–8 provides, *inter alia,* that "A party waives all defenses and objections which he does not present either by motion as hereinbefore provided or, if he has made no motion, in his answer or reply. * * *."

■ Under the accepted practice prior to the adoption of the 1947 Constitution a defendant who had unsuccessfully

defended a contract action in a law court could then apply to the Chancery Court for reformation of the contract. *The Commercial Union Assurance Co. v. N. J. Rubber Co.,* 64 *N. J. Eq.* 338 (*E. & A.* 1902). Likewise, a plaintiff who had prosecuted an action on a contract to judgment which was rendered for the defendant was not precluded from thereafter seeking reformation of the contract in the Chancery Court. *Knight v. Electric Household Utilities Corp.,* 133 *N. J. Eq.* 87 (*Ch.* 1943) ; affirmed, 134 *N. J. Eq.* 542 (*E. & A.* 1943). The reason for the intercession by the equity courts was to prevent the injustice which sometimes resulted from the invulnerability of written instruments in a law court when such instruments did not express the actual intent of the parties but were unassailable in the law court because of the parol evidence rule. The basis for the equitable relief of reformation was the inadequacy of the remedy at law. *Knight v. Electric Household Utilities Corp., supra.* Under our present court structure we have a Superior Court which has original general jurisdiction throughout the State in all causes. It is divided into a Law Division and a Chancery Division for the trial of causes. Where adequate relief can be obtained in the Law Division, there is no need for intercession by the Chancery Division since the entire controversy can be determined in the Law Division in one and the same suit. The furnishing of complete relief in one court was the design of the unified court structure effectuated by the 1947 Constitution. Our present judical system is similar to that which is generally referred to as the "reformed procedure," wherein legal and equitable causes of action, legal and equitable defenses, and legal and equitable remedies may be united and determined by the same judgment. See *Pomeroy's Equity Jurisprudence,* (*5th ed.* 1941), *vol.* 1, § 84, *p.* 110; 45 *Am. Jur., Reformation of Instruments,* § 90, *p.* 639.

In the present case, Einsiedler was not only permitted to set up in the original action every equitable defense available to him but, indeed, was required to do so under *Rule* 3 :12–2. It is urged, however, that the reformation of an instrument constitutes affirmative relief and is not an "equi-

table defense" but rather is properly the subject of a counter-claim. Under the practice in our former Court of Chancery it was generally considered that a defendant should seek affirmative relief by filing a cross-bill and not by way of answer, *Miller v. Gregory,* 16 *N. J. Eq.* 274 (*Ch.* 1863), and that a cross-bill was the proper method of seeking reformation, *French v. Griffin,* 18 *N. J. Eq.* 279 (*Ch.* 1867) ; *Graham v. Berryman,* 19 *N. J. Eq.* 29 (*Ch.* 1868) ; reversed, *sub nom. Berryman v. Graham,* 21 *N. J. Eq.* 370 (*E. & A.* 1869) ; *Green v. Stone,* 54 *N. J. Eq.* 387 (*E. & A.* 1896), although in the last mentioned case, Justice Depue recognized that affirmative relief would be considered by the court where the defense of mistake was set up by answer without a cross-bill when the matter could be satisfactorily tried without a cross-bill, and referred to *Randolph v. Wilson,* 38 *N. J. Eq.* 28 (*Ch.* 884). In the *Randolph* case, the defendant sought reformation and relief on the theory that the mortgage instrument upon which a suit for deficiency was being prosecuted against him did not contain the true agreement of the parties. Chancellor Runyan, in that case, made the following statement :

> "This defence should regularly be set up by cross-bill, but this court has entertained it when set up by answer without cross-bill in cases of claim for deficiency, from the consideration that if the matter can be satisfactorily tried without a cross-bill, a regard to economy and a desire to favor simplicity in the mode of presenting the issue, recommend the method."

See also *Ames v. N. J. Franklinite Co.,* 12 *N. J. Eq.* 66 (*Ch.* 1858) ; affirmed, 12 *N. J. Eq.* 512 (*E. & A.* 1859), where, in a suit to foreclose a mortgage, the defendant had filed a cross-bill seeking reformation on the grounds of mistake. The Chancellor said, at *page* 67 :

> "The company filed a cross-bill, praying that the mortgage might be reformed. I do not consider the cross-bill necessary. If, under the circumstances, the defendants are entitled to have the mistake corrected, there is no difficulty in accomplishing that object by a decree upon the original bill, declaring that the complainant, by reason of the mistake, is not entitled to have the property in dispute sold to pay his debt. A cross-bill was not necessary for the purpose of relief."

■ Thus it appears that, while preferred procedure for seeking the affirmative relief of reformation by a defendant in our former Court of Chancery was originally by cross-bill and subsequently by a counterclaim, since the Chancery Act of 1915 (*L. 1915, p. 195, Schedule A, Rule* 54) and Chancery Rule 70, pursuant thereto, abolished cross-bills and substituted counterclaims therefor, reformation could be sought by a defendant in his answer when the matter could be satisfactorily disposed of in such manner. Be that as it may, the character of the pleading which sought to defeat a claim being prosecuted against a defendant was a *defense* and the character of such pleading was not changed by the manner in which the defense was interposed, whether by answer, cross-bill or counterclaim. Mistake and fraud when pleaded by a defendant were considered to be *defenses*. See *Smith v. Allen, el al.,* 1 *N. J. Eq.* 43, 54 (*Ch.* 1830) ; *Miller v. Gregory, supra; French v. Griffin, supra; Randolph v. Wilson, supra; Green v. Stone, supra.* The fact that affirmative relief could be sought in equity on the basis of such defenses made them equitable defenses. Ballentine defines an equitable defense as follows :

"Any matter which would authorize an application to a court of chancery for relief against a legal liability, but which at law could not be pleaded in bar. That is, a defense which is recognized by courts of equity acting solely upon the inherent rules and principles of equity, altogether outside and independent of those rules and defenses which obtain in a court of law  *  *  *." *Ballentine's Law Dictionary* (1930), *p.* 440.

In *Clark's Summary of American Law* (1947), § 16, *p.* 566, it is said :

"Where under the old practice a defendant had no defense at law but was in a position to go into a court of equity and on some basis such as fraud or mistake, get a permanent injunction against the plaintiff's continuing with his action, the codes allow him to set up such facts at law. Such defenses are called equitable defenses at law, the word equitable merely indicating that the facts could formerly be made use of only in an equity court; however, the code provision that a defendant might plead as many defenses as he had 'both legal and equitable' has helped to crystallize the phrase."

In *Pomeroy's Equity Jurisprudence,* (*5th* ed. 1941), *vol.* 4, § 1369, *p.* 989, the meaning and nature of an equitable defense is stated as follows:

> "It is important to determine, in the first place, the nature and meaning of an 'equitable defense.' A defense is a right possessed by the defendant, arising from the facts alleged in his pleadings, which defeats the plaintiff's cause of action or claim for the remedy demanded by his action. An equitable defense is such a right, which exists solely by virtue of equitable doctrines, and which was originally recognized by courts of equity alone. The right constituting an equitable defense may be one which, when consummated and enforced, confers upon the defendant some affirmative equitable relief clothing him with a paramount *legal* title or estate, and thus defeating the plaintiff's claim; or it may be one which is purely defensive, which entitles the defendant to no affirmative relief, and which simply operates to bar the plaintiff's action. The general term 'equitable defense' plainly includes both of these classes."

██ It is clear from the foregoing that mistake and fraud such as would lead to a reformation of a written instrument are "equitable defenses." *Rule* 3:12–2 provides that "Every defense, legal or equitable," "*shall* be asserted in the answer." (Emphasis supplied.) It follows that Einsiedler should have sought the desired relief in the original action by pleading his equitable defense therein since it was germane to and went to the essence of the Massari cause of action, and if Einsiedler established and proved his defense reformation would have followed as an equitable incident of the right so established. When such an equitable defense is pleaded either by way of answer or counterclaim it should defeat the right asserted in the complaint and is in fact in equity a cognate defense thereto and should be so considered regardless of whether it is set up by way of defense or counterclaim. But if the defendant has an equitable right which is not germane or cognate to the right asserted by the plaintiff in his complaint the defendant may seek equitable relief over or against the plaintiff either by way of counterclaim under *Rule* 3:13–1 or by way of a third party complaint under *Rule* 3:14–1.

██ Einsiedler's defense in this case was such that under the principles of *res judicata* he could and should have raised

it in the original action instituted by Massaris and he was compelled so to do by the provisions of *Rule* 3:12–2 and since he did not raise such defense, both under the established principles of *res judicata* and the provisions of *Rule* 3:12–8, he is deemed to have waived the defense and is concluded by the judgment in the prior action.

The conclusion necessarily follows that the disposition of the original proceedings is *res judicata*. It is the cornerstone of our present court structure that all matters, whether legal or equitable, in a controversy be disposed of in one suit in one court to the end that a multiplicity of suits may be obviated. Adequate opportunity to fully litigate his defense and obtain the desired equitable relief in the original action was afforded Einsiedler by our rules, which made the defense not only available to him but made it mandatory that all equitable defenses available to him be interposed in the original action in the Law Division. Under such circumstances the judgment in *Massari v. Einsiedler, supra,* is conclusive of the rights of the parties. See *McMichael v. Horay,* 90 *N. J. L.* 142 (*E. & A.* 1916); *Nuzzi v. United States Casualty Co.,* 121 *N. J. L.* 249 (*E. & A.* 1938); *Cromwell v. Sac County,* 94 *U. S.* 351, 24 *L. Ed.* 195 (1877); *Knox County v. Harshman,* 133 *U. S.* 152, 33 *L. Ed.* 586 (1890); *David A. Manville & Co. v. Francis Oil & Refining Co.,* 20 *F.* 2d 473 (*C. C. A. Eighth Circuit* 1927); *Coos Bay Lumber Co. v. Collier,* 104 *F.* 2d 722 (*C. C. A. Ninth Circuit* 1939); *Hennepin Paper Co. v. Fort Wayne Corrugated Paper Co.,* 153 *F.* 2d 822 (*C. C. A. Seventh Circuit* 1946); *Freeman on Judgments,* (5th ed. 1925), vol. 2, § 776, p. 1652; *Restatement of the Law, Judgments,* § 66, comment c, p. 284. See also *Schnitzer's The New Practice* (1949), p. 151.

The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, WACHENFELD, BURLING and ACKERSON—6.

*For reversal*—None.