12 N.J. Super. 490 (1951)
79 A.2d 880
RAYMON HEUTER, PLAINTIFF-APPELLANT,
v.
COASTAL AIR LINES, INC., A CORPORATION OF DELAWARE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 5, 1951.
Decided March 20, 1951.
*491 Before Judges JACOBS, EASTWOOD and BIGELOW.
*492 Mr. Robert E. Pollan argued the cause for the appellant (Mr. Benjamin Osherov, attorney).
Mr. George Winne argued the cause for the respondent (Messrs. Winne & Banta, attorneys).
The opinion of the court was delivered by JACOBS, S.J.A.D.
The plaintiff filed an amended complaint in the Essex County Court seeking recovery because of injuries sustained in an airplane crash on January 7, 1948, in the vicinity of Savannah, Georgia. He alleged that he was a passenger on an airplane negligently operated by the defendant, a common carrier, and demanded damages in the sum of $26,500. The defendant's answer denied liability and set forth that on January 14, 1948, the plaintiff had executed a general release. The plaintiff's amended reply denied the execution of a release but admitted the signing, by his mark, of a paper the contents of which were unknown to him. It further asserted that the alleged release was obtained by fraud, misrepresentation and undue influence.
The plaintiff is an uneducated Puerto Rican who does not read, write or understand English but understands Spanish. The defendant took his deposition through an interpreter and although his recollection was impaired the following story may properly be gathered from his testimony. After the accident he found himself bandaged and in bed at a Savannah hospital and he remained there for approximately 15 days. At the hospital he was visited daily by several men whom he did not know; it now appears that they were employees of an agency engaged by the defendant to effect a settlement on its behalf. On January 14, 1948, they told him that since he "was feeling pretty good" they were going to take him down-town to buy him "some clothes" and give him "some money." Thereupon they took him from the hospital while dressed in bathrobe and slippers, clothed and gave him $316 in cash, and brought him back to the hospital. He admitted that he signed his X mark on the paper which is the release relied *493 upon by the defendant but denied that the contents of the papers were ever read or explained to him. When asked why he made his mark and took money from strangers he said simply, "I don't know nothing because I was sick."
After the plaintiff's deposition was completed the defendant moved for summary judgment. In support it relied upon the deposition and an affidavit by Frank P. Howell, an employee of the agency engaged by the defendant to negotiate a settlement with the plaintiff. Mr. Howell's affidavit states that the release for the stated sum of $1,457 was executed by the plaintiff "of his own voluntary act and he executed by his mark, because he stated that he did not know how to write his name." It does not assert that the release was ever read to the plaintiff or that he was in any wise advised as to its contents, nor does it deny any of the testimony as to how the release was obtained. The motion came on before a Superior Court Judge assigned to the Law Division and on September 11, 1950, he ordered that summary judgment be entered in favor of the defendant. The plaintiff has duly appealed therefrom.
There has been considerable litigation with respect to the validity of releases from accident claims and an increasing awareness of the broad policy supporting a suggested requirement that they be fairly obtained. Cf. Ricketts v. Pennsylvania R. Co., 153 F.2d 757, 760 (2d Cir. 1946); 1 Stan. L. Rev. 298 (1949); 14 Ford. L. Rev. 135 (1945); 164 A.L.R. 402, 410. In our State most of the pertinent cases arose before the Constitution of 1947 and must be considered in the light of the then complete separation between law and equity. At law a person's signature on a release was considered binding unless it was "obtained by fraud or imposition practiced upon him with the intention of deceiving him as to the purport of the paper signed." Kearney v. National Grain Yeast Corp., 126 N.J.L. 307, 312 (E. & A. 1941); Mannion v. Hudson & Manhattan R.R. Co., 125 N.J.L. 606, 607 (Sup. Ct. 1941), affirmed 127 N.J.L. 230 (E. & A. 1941). The failure of the signer to comprehend the effect of his act *494 was said to be insufficient in the absence of fraudulent representation or similar misconduct by the person being released. Kearney v. National Grain Yeast Corp., supra; Vellekoup v. Fullerton & Co., 79 N.J.L. 16, 18 (Sup. Ct. 1909). But see Burik v. Dundee Woolen Co., 66 N.J.L. 420, 422 (Sup. Ct. 1901).
In equity, however, the rule permitting avoidance of a release was more broadly stated and in McGrail v. Jersey Central Traction Co., 84 N.J. Eq. 261, 267 (Ch. 1915), Vice-Chancellor Emery granted relief where he concluded that "upon the whole evidence relating to the negotiations for settlement and the execution of the release, it appears that such an unfair and inequitable advantage was taken by the company's agents, that the release must be set aside." See Dundee Chemical Works v. Connor, 46 N.J. Eq. 576, 582 (E. & A. 1890); Mullaney v. Mullaney, 65 N.J. Eq. 384, 396 (E. & A. 1903). In the Connor case, supra, Justice Magie pointed out that it is only when the release is obtained "from the illiterate, the weak-minded or distressed party, under circumstances which indicate that it was procured by artifice or deception, or by undue pressure and importunity inducing action without advice or time for deliberation, or by advantage taken of distress, or for no or an inadequate consideration, or is otherwise inequitable, that it will come under condemnation."
Since the adoption of the Constitution of 1947 and the creation of our new judicial structure, the earlier complete separation between law and equity has been terminated. Legal and equitable relief may now be granted by each of the trial divisions of the Superior Court. Constitution of 1947, Art. VI, § 3, par. 4; O'Neill v. Vreeland, 6 N.J. 158, 166 (1951); Massari v. Einsiedler, 6 N.J. 303, 309 (1951). Similarly where, as here, an action within its jurisdiction is brought in the Law Division of the County Court it may grant legal and equitable relief so that all matters in controversy between the parties may be completely determined. Art. VI, § 4, par. 5; Stier v. Schreiber, 3 N.J. Super. 450 *495 (Cty. Ct. 1949). The plaintiff's amended reply, although perhaps inartistically worded and subject to amendment, was sufficient to set forth equitable as well as legal issues and he was entitled to have them determined in regular course. Cf. Rule 3:39-2; Volker v. Connecticut Fire Ins. Co., 11 N.J. Super. 225, 231 (App. Div. 1951). The danger of the loss of equitable principles in the administration of equity "by judges with only a legal point of view" has been noticed. Bordwell, The Resurgence of Equity, 1 U. of Chi. L. Rev. 741, 747 (1934). If the high hopes of the framers of our new judicial structure are to be attained without such loss there must be constant awareness by the bar as well as the trial bench of their appropriate applicability in proceedings in the Law Division of the Superior or County Court.
In Templeton v. Glen Rock, 11 N.J. Super. 1 (App. Div. 1950) we recently pointed out that the court in considering a motion for summary judgment should be critical of the moving but not the opposing papers and should grant it only upon a clear showing. In the instant matter, the plaintiff was entitled to the benefit of all the testimony in his favor including the reasonable inferences which might properly be drawn therefrom; we are satisfied that it was entirely sufficient to withstand the motion for summary judgment. The defendant's position to the contrary is apparently based on the contention that, unlike the situation in Evangelista v. Public Service Coordinated Transp., 7 N.J. Super. 164, 167 (App. Div. 1950), there was no evidence of any affirmative misstatement by its agents sufficient to vitiate the release at law. We reject this contention because of our view that, even assuming the agents refrained from making any affirmative misstatement, their conduct, upon the present showing, was nevertheless such as to warrant submission to the jury of the issue as to whether there had been "imposition practiced upon the signer with intent to deceive him as to the purport of the paper signed." Evangelista v. Public Service Coordinated Transp., supra. Willful silence where, as here, the circumstances gave rise to a clear duty to speak *496 and explain may not be differentiated from willful misstatement. See Restatement, Contracts, §§ 471, 472 (1932); 23 Am. Jur. p. 854 (1939). Furthermore, as we have already indicated, the plaintiff was not confined to a sufficient showing at law as the defendant suggests. To avoid the release he could properly rely upon the evidence of his illiteracy, his illness, the absence of friends and counsel, his lack of understanding and the omission of all explanation, the haste, pressure and somewhat startling circumstances surrounding the procurement of his mark, and invoke pertinent equitable principles based upon unfair and unconscionable conduct of the defendant. Dundee Chemical Works v. Connor, supra; McGrail v. Jersey Central Traction Co., supra.
The judgment is reversed with costs to abide the event of trial.