17 N.J. Super. 20 (1951)
85 A.2d 304
ALLAN L. TUMARKIN, PLAINTIFF-RESPONDENT,
v.
ADOLPH FRIEDMAN, DEFENDANT-APPELLANT, AND MANUFACTURERS CUTTER CORPORATION, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued December 10, 1951.
Decided December 21, 1951.
*21 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Benjamin Gross argued the cause for the appellant (Messrs. Gross & Gross, attorneys).
Mr. Joseph J. Schotland argued the cause for the respondent (Messrs. Sandles & Sandles, attorneys).
The opinion of the court was delivered by JACOBS, S.J.A.D.
The delegates to the Constitutional Convention of 1947 completed their task with high hopes that the modern judicial structure which they erected, when implemented by appropriate court rules, would eliminate the jurisdictional disputes between Law and Chancery and the archaic procedural requirements which had so often frustrated just and expeditious determinations on the ultimate merits. In substantial measure their hopes are being rapidly fulfilled; sufficiently so that a recent survey of the New Jersey decisions could report that "almost every reported case was decided on the merits." Schnitzer, Civil Practice and Procedure, 6 Rutgers L. Rev. 351 (1951). However, instances still arise, as in the present case, where the only points presented to this court are jurisdictional and procedural *22 issues which have no real relation to the substantive controversy which will require later determination. Pound, Some Principles of Procedural Reform, 4 Ill. L. Rev. 388 (1910).
The plaintiff Allan L. Tumarkin, an attorney-at-law, is president and treasurer of the defendant Manufacturers Cutter Corporation. He and his wife are the stockholders and, along with his secretary, the directors. By an instrument dated December 15, 1950, the defendant Adolph Friedman undertook to liquidate the corporation's machinery and equipment upon the terms therein set forth. The instrument contained a tender to the corporation by Friedman of a $7,500 deposit by check "made payable to the order of Allan L. Tumarkin, your attorney" to be held in escrow. The corporation "approved and accepted" the agreement on December 18, 1950, and the $7,500 deposit was delivered to Mr. Tumarkin. Thereafter the corporation sought to cancel the agreement but this was unacceptable to Friedman. In January, 1951, Friedman filed a complaint in the Law Division of the Essex County Court alleging the agreement, his performance of conditions precedent and the corporation's breach, and in effect sought recovery of damages for the breach from the corporation and return of the deposit from Tumarkin. On February 3, 1951, the corporation filed its answer and counterclaim which asserted various legal and equitable defenses, alleged that Friedman had breached the agreement and maliciously injured its business and that it was entitled to the deposit in partial satisfaction, and sought damages from Friedman aggregating $50,000.
Although Tumarkin admittedly had possession of the $7,500 deposit and was a party in the County Court proceeding, he took no action therein. He did not seek to deposit the fund with the County Court (Rule 3:67-1) nor did he seek any relief by way of answer and counterclaim. Cf. Const., art. VI, sec. IV, par. 5; Heuter v. Coastal Air Lines, Inc., 12 N.J. Super. 490, 494 (App. Div. 1951). Instead, he filed an independent complaint under Rule 3:22 in the *23 Superior Court, Chancery Division, seeking to have Friedman and the corporation interplead their claims to the $7,500 deposit. Tumarkin's deposition was then taken and was apparently used, without objection, on a motion by Friedman to strike the Chancery complaint. See East Newark Realty Corp. v. Dolan, 15 N.J. Super. 288, 294 (App. Div. 1951). The motion was denied and on May 4, 1951, the Chancery Division entered judgment directing Friedman and the corporation to interplead, restraining the prosecution of the County Court action against Tumarkin, and awarding to him costs including a counsel fee to be paid out of the $7,500 fund. The present appeal to this court is by Friedman from this judgment.
The substantial controversy which will require ultimate determination on its merits is between Friedman and the corporation, with each alleging breach or wrongdoing by the other and claiming substantial damages; disposition of the $7,500 deposit held by Tumarkin would be an incidental part of its outcome. If Friedman's action had been instituted against the corporation and Tumarkin in the Law Division of the Superior Court rather than the County Court the entire matter would properly have been disposed of there without piecemeal litigation elsewhere (Const., art. VI, sec. III, par. 4; Massari v. Einsiedler, 6 N.J. 303 (1951)); if Tumarkin despite his acknowledged relation to the corporation desired to avoid further participation individually he could have obtained leave to deposit the $7,500 in the Superior Court (Rule 3:67-1) and sought, in his answer and counterclaim, such legal or equitable relief as he considered necessary or appropriate under the circumstances. Rules 3:12, 3:13, 3:22. It would have been directly contrary to the philosophy underlying our Judicial Article and court rules to have approved application to the Chancery Division to entertain a portion of the larger controversy and restrain the proceeding in the Law Division of the Superior Court. Cf. Massari v. Einsiedler, supra; Pound, Organization of Courts, 254 (1940); see Rule 3:65-7.
*24 Conceding the foregoing, Tumarkin urges its inapplicability to the pending proceeding in the Law Division of the Essex County Court where, he contends, he could not receive the adequate relief by answer and counterclaim which would have been available to him in the Law Division of the Superior Court if the action had been instituted there. In view of the general flexibility of our judicial system and the actual interchange of County and Superior Court Judges (art. XI, sec. IV, par. 5; N.J.S. 2A:3-7) we consider the undesirability of the view thus advanced to be evident; we should be reluctant to reach it in the absence of compelling authority.
In creating the County Court and providing for its jurisdiction the framers of the Constitution sought to achieve several fairly clear objectives. Const., art. VI, sec. IV; Report of the Committee on the Judiciary, pp. 19, 20 (1947), reprinted in 2 Constitutional Convention of 1947, 1192 (1951). Until altered by law the County Court is to exercise the original jurisdiction exercised by the several courts which it has replaced; since none of those courts could exercise equitable jurisdiction which required the action of the Court of Chancery the County Court may not, in the absence of alteration by law, entertain an original complaint seeking the exercise of such jurisdiction. Miske v. Habay, 1 N.J. 368, 374 (1949). Where, however, a complaint within its jurisdiction is properly filed in the County Court, as in the instant matter, then the County Court "subject to law, may grant legal and equitable relief so that all matters in controversy between the parties may be completely determined." art. VI, sec. IV, par. 5. In the language of the Convention's Judiciary Committee, under this provision and subject to law, "cases properly brought in the County Courts will be completely determined by allowing equitable defenses and counterclaims." See Report, supra; Heuter v. Coastal Air Lines, Inc., supra. See also 1 Constitutional Convention of 1947, 592 (1949).
*25 The contention is advanced that under Winberry v. Salisbury, 5 N.J. 240 (1950), cert. denied 340 U.S. 877, 95 L.Ed. 638 (1950) the Supreme Court may, by a rule of practice, restrict the jurisdiction of the County Court to entertain equitable answers and counterclaims and that it has done so by providing in Rule 5:2-1 that Rule 3:22 relating to interpleader shall not apply to the County Courts. In the Winberry case the Supreme Court construed the phrase "subject to law" in another section of the Constitution to mean subject to substantive law rather than legislation; it nowhere dealt with the present suggestion that it might be construed to mean subject to rules of practice. See Heckel, Constitutional Law, 6 Rutgers L. Rev. 27, 29 (1951). But cf. Clark, Procedural Aspects of the New State Independence, 8 Geo. Wash. L. Rev. 1230, 1234 (1940). However, we need not pursue the issue since we are satisfied that the Supreme Court has in nowise sought to restrict the County Court's jurisdiction to entertain an equitable answer and counterclaim which would permit it to determine all issues in a case properly originating within its jurisdiction. Rule 3:22 which has its counterpart in Federal Rule 22 was designed to provide a modern and liberal method of obtaining interpleader. 3 Moore, Federal Practice (2d ed. 1948), 3007. Although it contains a reference to counterclaims it deals primarily with original interpleader complaints which may not be filed in the County Courts because of their equitable nature; accordingly, it was not carried over to the County Courts by Rule 5:2-1. See Comment, Rule 5:2-1, Tentative Draft, Court Rules 353 (1948). However, Rules 3:12 and 3:13 which prescribe the practice with respect to legal and equitable defenses and counterclaims generally were carried over and are sufficient to implement the design of art. VI, sec. IV, par. 5. See Const., art. XI, sec. IV, par. 5.
In the instant matter all the parties were properly before the County Court and the defendant could readily have sought whatever equitable relief he deemed necessary by way of answer and counterclaim. See Heuter v. Coastal Air Lines, *26 Inc., supra. Cf. Mieczkowski v. Mieczkowski, 141 N.J. Eq. 367, 369 (Ch. 1948). At the argument on appeal, Friedman conceded that although the ad damnum clause of his complaint contained the customary phrase "with interest and costs," his ultimate claim against Tumarkin individually was to have him deposit the $7,500 fund in court to insure its availability at the outcome of the controversy; and Tumarkin conceded that since there had been no demand upon him prior to the institution of the action, any question as to interest and costs would, as a practical matter, have been substantially avoided if he had obtained leave to deposit the fund in the County Court. Insofar as his own corporation was concerned Tumarkin was obviously in no real jeopardy, and in fact the corporation did not seek any relief against him in its pleading in the County Court. See Rule 3:13-6. It appears clear to us that relief, wholly adequate under the particular circumstances, could have been obtained by Tumarkin in the County Court, and in the interests of the proper administration of justice, he should have sought it there, thus avoiding the expense and delay, as well as the splitting of the controversy and the unseemly jurisdictional or procedural conflict, which resulted from his independent complaint in the Chancery Division. See Pound, Organization of Courts, 256 (1940).
It is said that lawyers and even great judges display reluctance "to let the past go." Clark, The Handmaid of Justice, 23 Wash. U.L. Quar. 297, 311 (1938). Thus it may be noted that despite our modern judicial system and rules there appears to have been little letup in procedural contentions unrelated to the merits which, though mostly unfruitful, have involved considerable wastage; indeed, it has recently been estimated that almost half of our reported opinions, while disposing of the merits, have also dealt with questions of procedure. Schnitzer, supra. Procedural rules should not in themselves be the source of any extensive litigation (Vanderbilt, The New Rules of the Supreme Court on Appellate Procedure, 2 Rutgers L. Rev. 1, 18 (1948)); they should be *27 subordinated to their true role, i.e., simply a means to the end of obtaining just and expeditious determinations between the parties on the ultimate merits. Ciocca v. Hacker, 4 N.J. Super. 28, 33 (App. Div. 1949); Hogan v. Hodge, 6 N.J. Super. 55, 59 (App. Div. 1949). It seems to us that sympathetic observance of the foregoing by all the parties in the instant matter might well have avoided needless litigation and enabled the fair and final disposition of the entire controversy in the County Court, perhaps even before this date.
Without suggesting any absence or limitation of jurisdiction in the Chancery Division we are satisfied that, under the circumstances presented, it ought not have been exercised. Accordingly, its judgment is reversed with direction that the complaint therein be dismissed and with leave to Tumarkin to deposit the $7,500 fund and file answer and counterclaim forthwith in the County Court. No costs.