52 N.J. Super. 439 (1958)
145 A.2d 643
LENA SCOTT, PLAINTIFF-APPELLANT,
v.
EUGENE BODNAR T/A BODNAR'S LIQUOR STORE AND GEORGE KUCHARCZYK, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1958.
Decided November 12, 1958.
*440 Before Judges PRICE, SCHETTINO and HALL.
Mr. Philip Strong argued the cause for plaintiff-appellant (Messrs. Strong and Strong, attorneys; Mr. John V.R. Strong, of counsel).
Mr. Edward E. Kuebler argued the cause for defendants-respondents.
The opinion of the court was delivered by PRICE, S.J.A.D.
Plaintiff appeals from a judgment in favor of defendants entered on the latter's motion in the district court at the conclusion of the entire case. Plaintiff's *441 action was based on negligence arising out of an automobile accident in which she was injured. The case was tried before a judge and jury in the district court on transfer from the County Court, in which latter court it had been instituted. A County Court judge presided at the district court trial. The primary question involved in the litigation was whether a general release to which plaintiff had affixed her mark barred her action. The trial court held it did.
For present purposes we may assume that plaintiff was injured on October 14, 1955 when struck by a truck of defendant Bodnar operated by defendant Kucharczyk, that she was struck as she was walking on the sidewalk in Talmadge Street, New Brunswick, and that the accident occurred in an area where an entrance driveway from the street crossed the sidewalk. Plaintiff allegedly suffered severe bruises and sprains as a result of the accident. Her injuries were such as to require her confinement in a hospital for four days and necessitated subsequent treatment at a hospital clinic.
The case is complicated by certain problems of procedure, the most important of which arises by virtue of the fact that the trial court considered and disposed of plaintiff's defense to the release on equitable grounds despite the fact that the case was being tried in the district court. Reference to the pleadings and to the subsequent action by the court discloses the procedural problems presented by the appeal.
Plaintiff's complaint sought the recovery of damages for her injuries and reimbursement for consequential expenses and for wages allegedly lost as a result of the accident aforesaid. The answer challenged the allegation of negligence and asserted plaintiff's contributory negligence. In a second separate defense it was asserted that an insurance carrier on behalf of defendants settled plaintiff's claim and that plaintiff executed a written release dated November 15, 1955 discharging defendants from all liability. A copy of the release was appended to the answer. Plaintiff filed a reply alleging that she was illiterate, that the release was *442 not executed by her and that her alleged mark upon the paper purporting to be a release was induced by fraud and misrepresentation. Although inartistically worded, the reply warrants the conclusion that plaintiff's attempted avoidance of the release included equitable defenses upon which she primarily relied at trial.
At the trial plaintiff contended that she had affixed her mark to the document in question without knowing its significance and that the representative of the insurance carrier of the defendant owner had failed to reveal its true nature to her. Examination of the testimony leaves no doubt that the basis of plaintiff's defense to the release rested in the equitable field. Much of the evidence presented would have been inadmissible if legal issues only were involved. In view of plaintiff's claim that equitable fraud was present the case should not have been transferred to the district court as that court had no jurisdiction to determine equitable issues. N.J.S. 2A:6-34(a); Josefowicz v. Porter, 32 N.J. Super. 585, 589 (App. Div. 1954).
The record on appeal does not contain a transcript of the argument made by defendants' counsel before the trial court in support of his motion for dismissal, but does contain a transcript of his introductory remarks as follows:
"If it please your Honor, on behalf of the defendants I respectfully move for a judgment of dismissal on the ground that the release offered in evidence as D-1 on behalf of the defendants is a bar in this suit to the claims of the plaintiff for injuries and damages as a result of the accident on October 14, 1955."
Examination of the record shows that the trial judge, in granting defendants' motion for a judgment in their favor, disposed of the case as if he were sitting as an equity judge. He weighed the testimony offered by the respective litigants. His determination was couched in language which demonstrates conclusively that he made findings of fact and drew conclusions of law as if he were sitting without a jury in an equity case. Consequently we review it on that basis.
*443 The proofs showed that plaintiff, 43 years of age, was illiterate. She had only one year of school instruction during her entire life and none since she was six or seven years of age. Although there was no expert evidence as to the measure or grade of her mentality, her testimony at the trial furnishes ample proof that she was so lacking in intelligence as to render her incapable of answering responsively numerous simple questions propounded to her. Her failure to comprehend many of the questions presented, including those propounded by her lawyer as well as those addressed to her in cross-examination, demonstrates her low mental state.
The aforesaid release consisted of a printed form with longhand insertions by the investigator describing the site and date of the accident and other incidental details. It embodied an expressed consideration of $163 of which sum admittedly $63 related to a hospital bill incurred by plaintiff as a result of the accident. Plaintiff's mark was witnessed by one Leonard Frisch in whose home plaintiff worked as a part time employee.
The release was procured by a representative of the insurance carrier at the home of plaintiff's employer. The primary objective of his call was to investigate the facts of the accident. However, as was his custom he had blank release forms in his possession. Within defined monetary limits he was authorized by his employer to settle those cases in which the opportunity to do so arose during the investigation.
On November 15, 1955 the insurance representative was engaged at the home of Mr. Frisch for a total period of 45 minutes to one hour, during which time plaintiff was interrogated, the release prepared and plaintiff's mark made thereon. Contemporaneously, the representative delivered a draft for $100 to plaintiff. It has not been cashed. He subsequently paid the hospital the aforesaid sum of $63. The release contains a statement in longhand, following the statement of the consideration of $163, as follows: "It is understood that out of the above mentioned sum of money *444 the hospital bill of St. Peter's shall be paid and deducted from this sum."
Although handicapped by her limited ability of expression plaintiff testified to the effect that she had not conferred with any lawyer prior to the agent's call at her employer's home; that the true nature of the transaction was not explained to her by the insurance representative; that she did not know the significance of the document on which she placed her mark and that she thought the $100 was a gift from defendant Bodnar.
Mr. Frisch testified that he was not present when the agent conferred with plaintiff nor was he asked to be present during the conference; that thereafter he was called into the room and merely witnessed the making of plaintiff's mark; that he did not know the nature of the document to which plaintiff affixed her mark; that the release was not read to him nor explained in his presence; that he was not asked to read or explain it to plaintiff nor did he do so; that although the phrase "signed, sealed and read in the presence of" appears in the printed form above his signature he did not read the release nor did the agent ask him to do so; that he knew from what the agent said that plaintiff was receiving $100; that he surmised it was a settlement; that his opinion was neither asked nor given; that plaintiff signified, in response to his inquiry, that she was satisfied with the amount of the settlement; that he made no protest to the agent about it, the absence of which protest he explained by the assertion that he considered it none of his "business." He further testified that he could not recall any statement by the agent about the $63 hospital bill.
The agent testified that he discussed the settlement with plaintiff out of the presence of Mr. Frisch. He asserted, however, that later he explained the details to Mr. Frisch in plaintiff's presence when, on learning plaintiff could neither read nor write, he called Mr. Frisch from another part of the house to witness plaintiff's mark on the release. The agent testified that earlier, on receiving permission from *445 Mr. Frisch to use the telephone, he called the hospital and ascertained that its bill was $63. He did not assert that the conversation with the hospital took place in the presence of plaintiff or of Mr. Frisch. He said he could not recollect whether he asked Mr. Frisch to read the release or whether Mr. Frisch did read it. He testified affirmatively that Mr. Frisch did not read the release to plaintiff, but that Mr. Frisch asked her whether she was satisfied with the $163, which would include the payment of the hospital bill, and that she answered affirmatively. He further testified that he explained the settlement to Mr. Frisch in plaintiff's presence and stated that her execution of the release would release Bodnar and the driver from any claim.
Following the making of the foregoing motion for dismissal the judge expressly stated that he was dealing with the case on equitable principles and in fact said: "County Courts now are authorized to administer equity as well as law." The court held that the insurance investigator's actions were fair, that the court found no fraud present because there was evidence that the insurance investigator explained the paper to plaintiff as a "settlement," and there was no evidence that he knew that plaintiff "misunderstood" or "misconstrued" the word "settlement"; that there was no confidential relationship present and no duty on the investigator to see that the plaintiff obtained independent advice. He thereupon directed a judgment in favor of defendant based on his determination that the release barred the action.
In making a proper disposition of this appeal it is emphasized that no suggestion was made at trial level that the district court had no jurisdiction to try equitable issues. Indeed, on appeal the propriety of the court's action from a jurisdictional aspect was not raised by either counsel. As hereinabove expressed, we recognize that the trial court assumed to dispose of this case on conflicting evidence and on the application of equitable principles. We are called upon to review his determination within the restrictions imposed by R.R. 4:53-1; R.R. 1:5-4; R.R. 2:5.
*446 In Capone v. Norton, 11 N.J. Super. 189, 193 (App. Div. 1951), affirmed 8 N.J. 54 (1951), this court in an opinion by Judge Bigelow said:
"The Rules remind us that `due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.' Beyond that, every intendment is in favor of the judgment under review, and we should not disturb the court's finding of fact unless we are well satisfied that the finding is a mistaken one. McGowan v. Peter Doelger Brewing Co., 10 N.J. Super. 276 (App. Div. Nov. 1950). But respect for the trial court imposes no restraint on our power fully to analyze the proofs and thereby arrive at a conclusion whether the finding is consistent with the evidence."
In Lehmann v. Lehmann, 7 N.J. Super. 232, 235 (App. Div. 1950), certification denied, 5 N.J. 349 (1950), Judge Eastwood expressed this court's view as follows:
"In the case of Cartan v. Phelps, 91 N.J. Eq. 312 (E. & A. 1920), the decree of the Court of Chancery was reversed by the Court of Errors and Appeals, holding that `* * * the rule giving great weight in the appellate court to the Vice-Chancellor's finding on a question of fact imposes no restraint on the power of the former to ascertain, by full investigation and analysis of the evidence, what the facts are, and whether the general finding is consistent therewith. * * *' On a review under R. 1:2-20 and 4:2-6, any cause involving issues of fact not determined by the verdict of a jury, new or amended findings of fact may be made, but due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. In the instant case, we have concluded that it is essential that we review the evidence and reach our independent findings."
See also Judge Goldmann's opinion for this court in State v. Taylor, 38 N.J. Super. 6, 21 (App. Div. 1955).
We conclude also that pursuant to R.R. 1:27D(b) we shall direct the appropriate judgment to be entered in the proper court.
It is our determination that the proofs do not establish that the insurance representative was guilty of such fraud and misrepresentation as would have formed the basis of an action at law prior to the Constitution of 1947. At law a person's signature was considered binding unless it was "`obtained by fraud or imposition practiced upon him with *447 the intention of deceiving him as to the purport of the paper signed.' * * * The failure of the signer to comprehend the effect of his act was said to be insufficient in the absence of fraudulent representation or similar misconduct by the person being released." Heuter v. Coastal Air Lines, Inc., 12 N.J. Super. 490, 493 (App. Div. 1951).
However, the following quotation from the Heuter opinion outlines the equitable principles to be considered and applied in permitting avoidance of a release in an appropriate case (12 N.J. Super., at pages 494-495):
"In equity, however, the rule permitting avoidance of a release was more broadly stated and in McGrail v. Jersey Central Traction Co., 84 N.J. Eq. 261, 267 (Ch. 1915), Vice-Chancellor Emery granted relief where he concluded that `upon the whole evidence relating to the negotiations for settlement and the execution of the release, it appears that such an unfair and inequitable advantage was taken by the company's agents, that the release must be set aside.' See Dundee Chemical Works v. Connor, 46 N.J. Eq. 576, 582 (E. & A. 1890); Mullaney v. Mullaney, 65 N.J. Eq. 384, 396 (E. & A. 1903). In the Connor case, supra, Justice Magie pointed out that it is only when the release is obtained `from the illiterate, the weak-minded or distressed party, under circumstances which indicate that it was procured by artifice or deception, or by undue pressure and importunity inducing action without advice or time for deliberation, or by advantage taken of distress, or for no or an inadequate consideration, or is otherwise inequitable, that it will come under condemnation.'
Since the adoption of the Constitution of 1947 and the creation of our new judicial structure, the earlier complete separation between law and equity has been terminated. Legal and equitable relief may now be granted by each of the trial divisions of the Superior Court. Constitution of 1947, Art. VI, § 3, par. 4; O'Neill v. Vreeland, 6 N.J. 158, 166 (1951); Massari v. Einsiedler, 6 N.J. 303, 309 (1951). Similarly where, as here, an action within its jurisdiction is brought in the Law Division of the County Court it may grant legal and equitable relief so that all matters in controversy between the parties may be completely determined. Art. VI, § 4, par. 5; Stier v. Schreiber, 3 N.J. Super. 450 (Cty. Ct. 1949). * * *"
The Dundee and Mullaney cases cited in Heuter, supra, outline also the controlling equitable principles.
The specific question here presented is whether the facts in the case at bar as outlined above justify the avoidance *448 of the release pleaded in bar of the action, and whether the trial court's action in holding that the evidence was insufficient to avoid the release should be sustained.
It is recognized that the Heuter case came to this court on a challenge of the propriety of the trial court's action in granting defendant's motion for a summary judgment. Plaintiff's position in the case at bar is not as strong as the position of plaintiff in the Heuter case, but there are elements present which require that it be tested by the basic equitable principles outlined in the cited cases.
We find that plaintiff's mental deficiencies should have been so apparent to the insurance representative as to constitute a warning that he was required to make certain plaintiff comprehended the effect of the release. When the agent learned also that plaintiff was illiterate, his responsibility in this area increased. He and plaintiff were not dealing on a basis of equality. Plaintiff did not lack legal capacity to execute the release and consequently the disparity between her and the agent cannot, of itself, determine the question now under consideration. Dundee Chemical Works v. Connor, supra.
The trial court in the case at bar determined that the agent's action was fair; that in evaluating the action of the agent consideration should be given to what he knew with regard to plaintiff and that "he did not know that she misunderstood the term `settlement.'" That is not the determinative test which should be applied in the present case. Plaintiff's obvious mental limitations demanded that the agent make certain that she knew that her mark on the release would terminate the matter and foreclose any opportunity to receive further compensation.
The trial judge, in his decision, posed a query. He said that even if the agent did know that plaintiff "misunderstood the term `settlement,' what would he do, or what could anybody do, to give a better explanation?" He then said: "Well, they could probably state it in other terms, but what guarantee would there be that she would not be able to come back later and say that she didn't understand the *449 alternative explanation either? I think there is a limit to which the thing can be carried."
There are several things the agent could have done, and one or more of which we hold under the principle of the cited cases he should have done. The circumstances dictated that he should have proceeded much more deliberately. He should have left the release with plaintiff and returned later on that day or on another day for the purpose of affording her an opportunity to confer with relatives or friends out of his presence and at her leisure, or to confer at her convenience with Mr. Frisch if he were willing to afford her help and advice, or submit the matter to a lawyer, as she subsequently did, so that he might assess the propriety of the proposed settlement when viewed against the background of her injuries and the manner in which the accident occurred, or he should have told her specifically and made certain that she understood that if she took the money and signed the release she could never receive any more and that if she did not want to do so for any reason she did not have to and had the right to bring a suit. He did none of them. The case is barren of any evidence that he even attempted to have plaintiff repeat to him her understanding of the document she was asked to execute so that he might realize the extent of her comprehension.
Cases of this type vary greatly. Each must be determined on its own facts. The trial court reasoned as stated that there was an absence of proof that the agent knew that plaintiff did not comprehend the word "settlement." The issue is much deeper. It is whether the circumstances were such that the agent should have known that plaintiff did not comprehend the word "settlement" or should have realized that she might not understand it. We hold that the obvious situation exacted that realization by the agent. Fairness and justice demand that the release be set aside.
We hereby direct that the case be remanded to the County Court for the purpose of therein entering a partial judgment invalidating the release. Following the entry of the *450 aforesaid partial judgment in the County Court we further direct that the case be re-transferred to the district court for a new trial by the court and jury on the remaining issues. Prior to the trial and as a condition thereof plaintiff is directed to reimburse the insurance carrier for the sum of $63 paid by it to the hospital and to return to it the draft for $100. McGrail v. Jersey Central Traction Co., supra (84 N.J. Eq. 261, 268).
As we are making final determination of the specific issue presented to us we award plaintiff her costs on this appeal.