**VAN HOUTEN SERVICE, INC., Plaintiff,**

v.

**SHELL OIL COMPANY, Defendant.**

**Civ. A. No. 74–261.**

United States District Court, D. New Jersey.

Dec. 17, 1975.

Stephen Schnitzer and Michael N. Gordon, Schnitzer & Schnitzer, Newark, N.J., for plaintiff.

William Simon and Harry E. Jennings, Jr., Howrey & Simon, Washington, D.C., Andrew S. Polito and Thomas V. Hildner, Mattson, Madden, Polito & Loprete, Newark, N.J., for defendant.

## OPINION

LACEY, District Judge.

This matter is before the court on defendant's motion for summary judgment pursuant to Rule 56(b), Fed.R.Civ.P. The court, having heard oral argument and having considered the said motion together with the points and authorities, affidavits, depositions and other documents filed with respect to the motion, renders this opinion.

Plaintiff commenced the action in Superior Court in New Jersey on February 1, 1974 and defendant removed it to federal court pursuant to 28 U.S.C. § 1441. This court has jurisdiction under 28 U.S.C. § 1332.

Plaintiff Van Houten Service, Inc. ("Company") charges defendant Shell Oil Co., in its amended complaint, with violations of N.J.Stat.Ann. §§ 56:10-1 *et seq.,* the Franchise Practices Act, in that it allegedly terminated plaintiff's franchise without explanation, coerced Raymond Van Houten ("Van Houten"), plaintiff's principal owner and president,[1] into signing, on plaintiff's behalf, "a purported acquiescence in a release of the franchise agreement" and imposed improper restraints against the alienation of plaintiff's franchise. Counts 2 and 3 charge defendant with unlawful restraints in violation of N.J.Stat. Ann. §§ 56:9-1 *et seq.,* § 1 of the Sherman Act, and §§ 1 and 3 of the Clayton Act. Count 4 claims that defendant has discriminated in price in violation of § 13 of the Robinson-Patman Act. Defendant is charged with violating the New Jersey Unfair Motor Fuels Practices Act, N.J.Stat. Ann. 56:6-22 in Count 5, and the Economic Stabilization Regulations, Title 6, Chapter 3, Part 301 of Phase III Regulations. Plaintiff requests compensatory and punitive damages, attorneys' fees and costs of suit.

For the purposes of this motion, the following facts are pertinent. In July, 1970 plaintiff first became a Shell dealer after previously operating as a franchised Esso dealer for several years. In November, 1970 it became the dealer of a larger Shell station, the lease for which ended on November 30, 1973.

In November, 1971, in association with Martin Grossbarth, plaintiff's and Van Houten's personal accountant, and Harold Hirsh, Van Houten acquired a Wynn's automotive products distributorship for central Jersey.

On June 1, 1973 Shell instituted an allocation program to all its customers, whereby the dealer was permitted to purchase during each month of 1973 a percentage of the actual purchases made by the dealer at that location during the same month of 1972. Van Houten was not satisfied with the amount of gasoline purchases to which he was limited under the allocation program.

Van Houten had one other business interest during the period of plaintiff's Shell franchise—the field of private investigation.

In early November, 1973, plaintiff owed approximately $2,835 to Shell on its Tires, Batteries and Accessories (TBA) account. Van Houten met with Jack Vaughn, Shell's sales manager, Frank Dunst, Shell's territory manager for Elizabeth, New Jersey and Bill Lucas (whom Van Houten considered a good friend), Shell's dealer representative, and a "lease package" was discussed. Then on November 12, 1973, Dunst told Van Houten that his delinquent TBA account must be made current before his lease would be renewed. Shell and Van Houten could not agree on a form of repayment.

Several days later Lucas informed Van Houten that the company's lease would not

---

1. When the Company was originally formed, Mr. Van Houten was its president, Martin Grossbarth was its secretary and Bertha Van Houten, Mr. Van Houten's first wife, was also an officer. That arrangement was subsequently altered when the Company became the dealer under the second lease with Shell. Mr. Van Houten's Deposition at 82–83.

No shares were ever issued by the corporation and no directors' and shareholders' meetings were held. Mr. Van Houten was deposed on these issues and he thus responded.

Q. If no shares were ever issued, I am confused as to how you and Mr. Grossbarth would go about making a decision if the two of you didn't agree on a particular course of action.

A. Verbally there was one share issued to Mr. Grossbarth. I owned 99 per cent and he owned one share.

At the time the corporation was formed there had to be more than one individual forming a corporation. Today you only need one.

Q. Right. So is it accurate that you are the boss and what you say goes?

A. Yes.

Q. That has always been the case?

A. Yes.

Mr. Van Houten's Deposition at 83–84.

be renewed. Van Houten asked for an extension of time. Lucas, after conferring with Vaughn, obtained a 15-day extension for Van Houten's lease until December 15, 1973. Plaintiff then states that in response to his pleas to Lucas to do what he could to reverse the decision of Shell, Lucas replied, "I am going to see what I can do and see if I can find out for you why you are being terminated." Van Houten Deposition at 408.

On November 20, 1973 Lucas went to plaintiff's station with the necessary papers which included two copies of an earlier lease package, a 15-day lease agreement and a mutual termination agreement. Van Houten read and signed the 15-day lease agreement. He then read the caption and signed the termination agreement which contained a general release. The release stated:

THIS IS AN AGREEMENT, dated November 15, 1973, between SHELL OIL COMPANY, a Delaware corporation (herein called "Shell"), and Raymond Van Houten of 44 ·Lenhome Dr. South in Cranford, New Jersey (herein called "Dealer"):

1. TERMINATING, effective as of December 15, 1973, each of the following instruments between them:

Dealer Lease

Dealer Agreement

relating to the automobile service station located at Newark and Fairmount in Elizabeth, New Jersey; and

2. RELEASING each other, as of the date of this Agreement, from all claims which each now has against the other (whether or not known to either) arising directly or indirectly under, out of or in connection with each terminated instrument, or any consignments, sales or deliveries of petroleum products by Shell to Dealer, excepting, however, claims of Shell against Dealer for indebtedness, reimbursement or indemnification, or relating to personal property of Shell heretofore or now in Dealer's possession.

EXECUTED as of the date first herein specified.

Van Houten had signed a document similar to the termination agreement and release in connection with his first Shell franchise. Lucas then tore up one of the two copies of the earlier lease package. Van Houten grabbed the other lease package and refused to surrender it. Plaintiff's franchise with Shell was terminated on December 17, 1973 when a new dealer took over the operation of the service station.

Defendant, in support of its motion for summary judgment, argues that the general release which plaintiff signed bars this action, including all the claims within it. It submits that Van Houten's execution of the release is binding upon the company and Shell is thus released from all claims within it.

Plaintiff asserts, on the other hand, that there are material issues of fact which are in dispute which should defeat defendant's motion. It also argues that the general release which was signed was fraudulently induced and is not, therefore, binding.

Rule 56(c) provides that summary judgment shall be granted only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The movant has the burden of proof, *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); and the evidence presented to the court is construed in a light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The facts asserted by the party opposing the motion, if supported by affidavits or other evidentiary material, must be regarded as true. *First National Bank of Cincinnati v. Pepper,* 454 F.2d 626 (2d Cir. 1972); *Janek v. Celebrezze,* 336 F.2d 828 (3d Cir. 1964).

Both parties have submitted affidavits, depositions and exhibits which must be considered by the court. These include the depositions of Mr. and Ms. Van Houten, Messrs. Dunst, Vaughn, Lucas and Gross-

barth, and a copy of the release. For the purposes of this motion, the court will consider as true the facts as stated in the depositions of Mr. and Ms. Van Houten.

The initial question presented by this motion is whether the release, signed by Van Houten, bars the present action. The decision in *Three River Motor Co. v. The Ford Motor Co.*, 522 F.2d 885 (3d Cir. 1975) is partially dispositive of this issue. An interlocutory appeal from the refusal of the district court to apply a general release to bar a pending antitrust action by the plaintiff, the court reversed the lower court decision, finding that, notwithstanding the antitrust implications, state law governed the construction of the release, that the release was not executed under duress, as defined by Pennsylvania law, and that the language contained in the release was unambiguous and included the antitrust action subsequently brought. Thus guided, we look to the law of New Jersey to resolve the issues relating to the release in question in this case.

 It is the general rule in this state that where a party affixes his signature to a written instrument, such as a release, a conclusive presumption arises that he or she read, understood and assented to its terms and will not be heard to complain that the effect of the act of signing was not comprehended. *Peter W. Kero, Inc. v. Terminal Construction Corp.*, 6 N.J. 361, 368, 78 A.2d 814 (1951); *Kearney v. National Grain Yeast Corp.*, 126 N.J.L. 307, 19 A.2d 19, 21 (Ct.Err. & App.1941). There is an exception, however, where there is a showing of fraud, misrepresentation or over-reaching by the releasee, or a showing that the releasor was suffering from an incapacity affecting his ability to understand the meaning of the release or on any other equitable ground. *Raroha v. Earle Finance Corp., Inc.*, 47 N.J. 229, 234, 220 A.2d 107 (1966); *Wojcik v. Pollock*, 97 N.J.Super. 319, 324, 235 A.2d 58 (L.Div.1967).

Plaintiff asserts in its brief that the termination agreement containing the release was procured by fraud and that the validity of a release is a question for the jury. The

fraud alleged by plaintiff is fraud in the inducement and, in support of this, plaintiff states:

> The facts set forth above [these facts are set forth earlier in this opinion as plaintiff stated them in its deposition] should make clear that plaintiff neither knew or intended that the termination agreement presented to him for signature by Bill Lucas would end plaintiff's franchise and bar this suit.

Brief for Plaintiff at 20–21.

 Traditionally, the essential elements to an allegation of fraud are a material misrepresentation, knowledge by the defendant of the falsity, an intention that plaintiff act thereon, reasonable reliance in acting thereon by plaintiff and resultant damage. *Acme Finishing Co. v. Robertson Bros., Inc.*, 240 F.Supp. 1008 (D.N.J.1964), affirmed, 343 F.2d 801 (3d Cir. 1965); *Lopez v. Swyer*, 115 N.J.Super. 237, 279 A.2d 116 (App.Div.1971), affirmed and cause remanded, 62 N.J. 267, 300 A.2d 563 (1973). The central factor to the definition, the use of a false statement or material misrepresentation, is not present in the instant case. A typical example of such does appear in *Peter W. Kero, Inc., v. Terminal Construction Corp., supra,* where the supreme court affirmed the trial court's denial of defendant's motion for a directed verdict based on the insufficient evidence of fraud in the procurement of a release. Plaintiff alleged that he signed two blank release forms and that he and the defendant had agreed on the terms to be included in the release. Defendant, however, did not fill them in in accordance with their mutual understanding. Thus, a material misrepresentation was alleged by plaintiff and the court found that a question for the jury was presented. *Id.* at 369, 78 A.2d 814. In the case *sub judice*, I can find no allegation by plaintiff that defendant made such a misrepresentation.

Another typical fraud case was that of *Evangelista v. Public Service Coordinated Transport*, 7 N.J.Super. 164, 72 A.2d 534 (App.Div.1950), where plaintiff sued defendant for injuries sustained when alight-

ing from defendant's trolley. The trial court granted defendant's motion for judgment on the pleadings, finding that plaintiff had signed a release, although plaintiff argued that the release was procured by fraud. The Appellate Division reversed, holding that the plaintiff pleaded fraud sufficiently to withstand defendant's motion in that she alleged that she signed the release on a representation by defendant's agent that if her injury became worse, she would not be barred from opening the case. Her injury did become worse, yet defendant said that the release precluded liability. This case too must be distinguished from the case at bar. No representations were made by defendant as to the contents of either the lease agreement or the termination agreement.

When the defense of fraud is employed, it is used in one of three ways: fraud in the inducement, fraud in the execution, or fraud in the consideration. Plaintiff here asserts fraud in the inducement. The court in *McDonald v. Central R. Co.*, 89 N.J.L. 251, 98 A. 391 (Ct.Err. & App.1916) discussed the meaning of each of the three types of fraud. Plaintiff in that case allegedly signed a release after defendant's agent represented that the paper to be signed provided for plaintiff's future employment and that defendant would pay the compensation provided for by the Workmen's Compensation Act. Because the action was not brought upon the release, the case was found not to fall within the cases permitting fraud in the consideration to be alleged. "Fraud in the consideration," it continued, "means fraud in the inducement (in a legal sense) to the contract." *Id.* at 392. There must be a claim, therefore, that the consideration was misrepresented. A misrepresentation of the contents of a release is the typical case of fraud in the execution. According to the court, "it is a case where the defrauded party may properly say, 'I never agreed to that, and hence the document is not my deed.'" *Id.* It concluded that there was evidence of fraud in the execution and that the case should have been submitted to the jury.

In *Heuter v. Coastal Air Lines, Inc.*, 12 N.J.Super. 490, 79 A.2d 880 (App.Div.1951), the appellate court again reversed the trial court, when it granted defendant's motion for summary judgment in a case of alleged fraud in the inducement. Plaintiff, who had sustained injuries as a result of an airplane crash, brought suit against defendant airlines for negligently operating the airplane. Defendant's summary judgment motion was granted based on plaintiff's execution of a general release. Plaintiff asserted that the release was obtained by fraud, misrepresentation and undue influence. Plaintiff was an uneducated Puerto Rican who did not read, write or understand English. He was bandaged and in bed in Savannah, Georgia where he was visited daily by several unknown men who were engaged by defendant to effect a settlement. They took him from the hospital dressed in bathrobe and slippers, clothed him, gave him $316 in cash and brought him back to the hospital where he signed an X mark on a paper they gave him. The Appellate Division found that while agents of defendant had refrained from making an affirmative misstatement "their conduct . . . was nevertheless such as to warrant submission to the jury of the issue as to whether there had been 'imposition practiced upon the signer with intent to deceive him as to the purport of the paper signed.'" *Id.* at 497, 79 A.2d at 883 (citing *Evangelista v. Public Service Coordinated Transport, supra.*). Willful silence, where the circumstances clearly give rise to a duty to speak and explain, may not be differentiated from willful misstatement, the court held.

I find that the case at bar is clearly distinguishable from *Heuter*. There is nothing submitted by plaintiff which indicated a duty on the part of Shell Oil or Mr. Lucas to "speak and explain." Van Houten was told that his lease was to be terminated. That fact was the last bit of information he received before the papers were brought to him. He deposed that he read the caption on the termination agreement and release. He never stated that he did not know or understand the contents or

meaning of the release. *See* Mr. Van Houten's Deposition at 489.

In *Mannion v. Hudson & M. R. Co.,* 125 N.J.L. 606, 17 A.2d 546, *affirmed,* 127 N.J.L. 230, 21 A.2d 735 (Ct.Err. & App.1941), the Supreme Court of New Jersey held that the trial judge properly submitted the case to the jury on the issue of the release in question. Plaintiff, a 73-year-old woman, was injured when the subway door snapped shut on her arm. The next day, while at the same station, she became ill. Upon explaining the facts to a subway policeman, she was told to go home whereupon a representative of defendant company came to her home and suggested she see a company doctor. After seeing the doctor she was taken to the claims office where she was given $50 and told that everything possible would be done for her. She was given the release which she signed although she did not read it as she did not have her glasses with her. The court found that because the evidence was conflicting, it was the function of the jury to determine where the truth lay.

Plaintiff in its brief states that because fraud is given an expansive definition in New Jersey, it should be permitted to present its proofs on the issue of fraud to the jury. Plaintiff relies on the definition given in *Wiley v. Wirbelauer,* 116 N.J.Eq. 391, 396, 174 A. 20 (Ch.1934) to support its position:

> As a general rule, fraud consists in *anything calculated to deceive,* whether by single act or combination, or by suppression of truth, or a suggestion of what is false, whether it be direct falsehood or by innuendo, by speech or silence, word of mouth or look or gesture. It is any artifice by which a person is deceived to his disadvantage.

*Id.* at 23 (emphasis added). The court continues by stating that to establish fraud, the proof must be clear and convincing. *Id.*

The factual situations discussed above indicate the traditional application of the defense of fraud. An intent to deceive was clearly shown by each set of facts. That is not the case here. Plaintiff has indicated neither an intent to deceive nor an act of deception on the part of the defendant. The facts do not show a misrepresentation or a duty to speak. Plaintiff argues that where fraud in the execution or consideration of a release is in dispute, it is generally a question for the jury. However, it should be kept in mind, as this court stated in *Dworman v. Mayor and Bd. of Aldermen,* 370 F.Supp. 1065–66 (D.N.J.1974), " '[t]he showing of a genuine issue for trial is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts, and which would entitle the party opposing the motion . . . to a judgment as a matter of law.' *Bushie v. Stenocord Corp.,* 460 F.2d 116, 119 (9th Cir. 1972); *McGuire v. Columbia Broadcasting System, Inc.,* 399 F.2d 902, 905 (9th Cir. 1968)." *See also Bilotti v. Accurate Forming Corp.,* 39 N.J. 184, 188 A.2d 24 (1963).

█ I find that plaintiff has not sustained its burden of showing a *prima facie* case of fraud or the suggestion of fraud. Mr. Van Houten in his deposition, and plaintiff in its complaint, indicated that Mr. Van Houten was told on several occasions that the franchise would be terminated unless plaintiff immediately paid its overdue bill. Mr. Van Houten testified that Mr. Lucas was his friend, and had been such through much of the period of the franchise. He was told by Lucas that the franchise was to be terminated, subject only to a 15-day extension. Mr. Van Houten admits he has on a prior occasion read and signed both a termination agreement and a release. His only basis for the allegation of fraud is that Lucas allegedly stated: "I'll see what I can do." This by itself and in the instant factual situation is insufficient to establish the existence of fraud with respect to the release. Plaintiff fails anywhere to allege that Lucas, as defendant's agent, misrepresented or stated falsely any fact material to the termination agreement or release. Van Houten, as stated in plaintiff's brief at 21, may not have known or intended that the termination agreement presented to him would end his franchise and bar his suit, but that lack of knowledge

or intent under the facts of this case, as plaintiff presents them, does not constitute fraud on the part of the defendant.

■ A statement is also made in plaintiff's brief at 22 that "Mr. Lucas may be found to be Van Houten's fiduciary with the attendant responsibilities that entails." This is, however, never mentioned in the complaint or in Van Houten's deposition and is supported by no facts or law. Counsel's statement is not evidence and cannot, therefore, be used to create an issue of fact. *Bolt Associates, Inc. v. Alpine Geophysical Associates, Inc.,* 365 F.2d 742, 747 n.4 (3d Cir. 1966); *Proctor v. Sagamore Big Game Club,* 265 F.2d 196, 198–99 (3d Cir.), *cert. denied,* 361 U.S. 831, 80 S.Ct. 81, 4 L.Ed.2d 73 (1959); *James v. H. M. S. Port Lyttleton Port Line Limited,* 51 F.R.D. 216, 218 (E.D. Pa.1971).

The second issue concerning the release presented to the court is whether the release was intended to and did include all of the claims in the suit. The Third Circuit in *Three Rivers, supra,* at 894–97, found the release in that case unambiguous on its face and comprehensive as to the antitrust claims in that action. The parties, it held, intended that the release settle all accounts, known or unknown. I find the release in the present case similarly unambiguous. The release explicitly includes "all claims which each now has against the other (whether or not known to either) . .."

In *Novak v. General Electric Corp.,* 282 F.Supp. 1010 (E.D.Pa.1967), the district court applied New Jersey law to the interpretation of a release finding that the scope of the release was not readily ascertainable on a motion for summary judgment but should be determined by the trier of fact after a full hearing. *Id.* at 1023. In a footnote, however, the court went on to say:

Mere shorthand references such as "general release" are not in themselves sufficient. Nor do I think that ritualistic incantations such as the italicized por-

tions of the release . . . are sufficient to deprive one of unknown antitrust claims. *It is not too much to require the conspicuous insertion of a phrase stating that that the release covers, for example, "all claims, whether presently known, or unknown, suspected or unsuspected, arising out of the same or of different product lines as are here involved and whether related or unrelated to the present dispute as to law or facts or both," before we hold that as a matter of law, the parties must have intended to cover a prior unknown and unrelated claim.*

*Id.* at n. 44 (emphasis added).[2] The release in *Van Houten* includes most of the required portion mentioned above.

■ A general release, not restricted by its terms to particular claims or demands, ordinarily covers all claims and demands due at the time of execution. *Bilotti v. Accurate Forming Corp., supra. See also Virginia Impression Products Co. v. SCM Corp.,* 448 F.2d 262, 265 (4th Cir. 1971), *cert. denied,* 405 U.S. 936, 92 S.Ct. 945, 30 L.Ed.2d 811 (1972); *Jackson v. Marathon Oil Co.,* 441 F.2d 511, 512 (5th Cir. 1971); *Dura Electric Lamp Co. v. Westinghouse Electric Corp.,* 249 F.2d 5, 6–7 (3d Cir. 1957).

■ I find that the claims asserted in each of the six counts of the complaint are encompassed within the language of the release. The release signed by Raymond Van Houten will be given full effect and the present suit is thus barred. I will, therefore, not reach the merits of any of the other arguments raised by defendant on this motion. Defendant's motion for summary judgment is granted.

Submit an appropriate order.

---

2. Partial emphasis of the quoted material is in the original.