**Brenda COOPER, Plaintiff,**

v.

**BOROUGH OF WENONAH,
et al., Defendants.**

**Civil No. 96–3640.**

United States District Court,
D. New Jersey.

Aug. 29, 1997.

---

Robert P. Becker, Jr., Hannold, Cauffield, Marshall, McDonnell, Woodbury, NJ.

Brenda Cooper, Wenonah, NJ, pro se Plaintiff.

Helen Kinley, Wenonah, NJ, pro se plaintiff for the purposes of this motion only.

## OPINION

KUGLER, United States Magistrate Judge:

Helen Kinley ("Ms. Kinley") brings this motion to rescind a release, executed on February 25th 1997, absolving Defendant Borough of Wenonah from all claims stemming from the proposed drainage facility to be constructed on Plaintiff Brenda Cooper's property. The Borough of Wenonah opposes this motion. For the reasons set out below, the Motion to rescind the release is **DENIED**.

### BACKGROUND

In the early 1990's, the Borough of Wenonah sought to capitalize on undeveloped land-locked property it owned located near the property and home of Plaintiff Cooper. Compl. ¶ 7. To facilitate the sale and development of its property, the Borough of Wenonah established a street to provide frontage to the landlocked lots. Compl. ¶ 8. In constructing the street, the Borough of Wenonah took a portion of the plaintiff's land without her knowledge and without providing adequate compensation. Comp. ¶ 9; Injunctive Order 3 (Sept. 1, 1992). Additionally, because the borough allegedly directed the drainage system funnels onto the plaintiff's property, the drainage has allegedly caused, and continues to cause, severe flood damage to the plaintiff's property and home. Compl. ¶¶ 13–20.

Plaintiff Cooper, seeking injunctive relief, filed a complaint with claims sounding in negligence, inverse condemnation, and civil rights violations. Compl. 8–11. On September 1, 1992, the Hon. Joseph H. Rodriguez, U.S.D.J., found that the Borough of Wenonah had inversely condemned the plaintiff's property without adequate compensation and ordered it to permit Plaintiff Cooper to connect her residence to the public sewer and water facilities of the borough. Injunctive

Order 2–3 (Sept. 1, 1992). Judge Rodriguez also ordered that discovery be taken on the issue of damages. Injunctive Order 3 (Sept. 1, 1992).

As directed by the court, the parties embarked on discovery on the issue of damages. As the discovery unfolded, the parties discussed settlement of the damages issue and, after several discovery extensions, entered into a settlement agreement on September 23, 1993. *See* Consent Order (Sept. 23, 1997). The Consent Order provided, *in pari materia,* that the defendants would pay a sum certain to the plaintiff, and construct a drainage facility on the plaintiff's property to remediate the flooding and erosion damage ("Initial Drainage Facility"); and the plaintiff would grant the Borough of Wenonah an easement to construct and maintain the Initial Drainage Facility. Consent Order ¶¶ A, B. The construction and design of the Initial Drainage Facility was to be acceptable to and approved by the New Jersey Soil and Erosion and Sediment Control Division, and the plaintiff's engineer. Consent Order ¶ B.

At some point, Ms. Kinley, the plaintiff's mother, began alleging that the flooding on the plaintiff's property was causing water damage to her property as well. Significantly, the Consent Order directed that the Borough of Wenonah make adequate service available to permit Ms. Kinley to use the water and sewer services of the borough. Ms. Kinley's connection, however, was contingent upon her signing a release of liability for claims resulting from the construction of the proposed drainage facility to be built on her daughter's property, which would presumably alleviate any further water damage to her property as well. Consent Order ¶ C.[1] Having addressed Ms. Kinley's interest and granted her relief, the court established her as an interested party in this action.

For reasons not relevant to the issues herein, construction of the Initial Drainage Facility was not immediately forthcoming. As such, Judge Rodriguez ordered the Borough of Wenonah to immediately take all action necessary to permit the connection of Ms. Cooper's and Ms. Kinley's properties to public water and sewer facilities of the borough. Court Order 1 (Feb. 14, 1995).

Because the parties disagreed as to whom would bear the cost of Ms. Kinley's water and sewer connection, her executed release was not immediately forthcoming either. On January 2, 1997, the undersigned entered an order clarifying the cost issue. Clarification Order (Jan. 2, 1997). We found that as to the connection of Ms. Kinley's property to the sewer and water facilities of the borough, the Borough of Wenonah was financially responsible for extending its water and sewer services to the edge of Ms. Kinley's property while she was financially responsible for the lateral connection from her property to the extended water and sewer lines. *See* Clarification Order. The Clarification Order also directed the parties to appear at a scheduled status conference to discuss the progress of the Initial Drainage Facility and any possible modifications.

When the parties appeared at the status conference on January 14th of this year, Ms. Cooper and the Borough of Wenonah agreed to construct a different type of facility ("Drainage Facility No. 2") on the plaintiff's property.[2] This modified facility was also designed to avoid or minimize flood damage to the plaintiff's property. In the order resulting from the conference, the court directed Ms. Kinley to execute a release, pursuant to the Consent Order, within 14 days, if she wanted water and sewer services. Court Order 2 (Jan. 17, 1997). In an ongoing effort to monitor the progress of Drainage Facility

**1.** The Order states, in pertinent part: "The Borough of Wenonah shall make adequate service available for extension to the plaintiff's mother's property for residential use at the sole expense of the ultimate user. It is understood that such extension of water service shall not occur at the present time, however, it shall be immediately available to the plaintiff's mother upon conveyance of a release from the plaintiff's mother releasing the Borough of Wenonah from any liability for any alleged problems that may or may not be related to the proposed drainage facility to be constructed on the plaintiff's property." Consent Order ¶ C (Sept. 27, 1993).

**2.** The difference between the Initial Drainage Facility and Drainage Facility No. 2 is not readily apparent, nor material for the determination of the issue herein, namely whether Ms. Kinley may rescind her release.

No. 2, the court scheduled another status conference for the parties to report on the efforts undertaken to complete the project.

Within that fourteen day period, Ms. Kinley signed a release as she was first noticed in the Consent Order of September, 1993 ("Amended Release"). But, as with all other matters in the case up to this point, the signing of the release was no simple execution. The circumstances surrounding the signing of the release Ms. Kinley now wants to rescind weigh heavily in the court's determination of the issue, and therefore require detailed attention.

As a courtesy and directed by the court, Mr. Becker, counsel for the Borough of Wenonah, sent Ms. Kinley a release for her signature ("1997 Release") after the court instructed her to execute a release within fourteen days. *See* Court Order 2 (Jan. 17, 1997). Apparently, Mr. Becker had also sent Ms. Kinley a release sometime in 1995 pursuant to the court's earlier instruction to sign a release (the "1995 Release"). The differences in the releases are not relevant because Ms. Kinley did not sign either. Instead, on her own volition, she submitted an Amended Release to the court.

The Amended Release was an updated version of the 1995 Release with two changes made in light of developments in the case since 1995. Ms. Kinley changed the word "unknown" in the first paragraph of the 1995 Release to the date "June 30, 1997" since the court had set a completion date for the project. Additionally, she replaced the second paragraph of the 1995 Release with the second paragraph of the 1997 Release.

Mr. Becker made changes in the 1997 Release that had not been in the prior releases sent to Ms. Kinley. First, the 1997 Release added other parties to be released that had not been previously named. It now stated that Ms. Kinley released the Borough of Wenonah, **its governmental officials, agents, employees, successors and assigns,** from any liability, while the 1995 Release only released the borough. Secondly, the 1997 Release released these parties from any liability of any **past, present and future** problems related to the drainage facility, while the 1995 Release absolved the borough from **any liability or alleged problems** related to the completion of the proposed project and did not specifically contain language about past, present, and future liability. *See* Amended Release (Jan. 27, 1997).

On February 25, 1997, the parties appeared before the court for the status conference. During the conference, Mr. Becker objected to Ms. Kinley's Amended Release.[3] With the court's guidance, Ms. Kinley and

---

**3.** The record, in relevant part, reads as follows:

MR. BECKER: No, Your Honor, it wasn't even one that I prepared.

COURT: Well, that's what I wanted to find out. Because apparently there's some issue about this.

MS. KINLEY: Your Honor, the release that I signed was the one that was submitted by Mr. Becker from the very beginning of 1995. He submitted the same one, he submitted the same one in November of '96 after our meeting. After he gave the certification in response to my motion for sanction[s], he submitted that same release for me to sign. I have his certification here. And also a copy, which is Exhibit H ..., it's the exact same release that he submitted each time, until after your ruling. Then he changed, he changed it after that, the whole wording, to include the individuals in Wenonah, employees and all that.

Mr. Becker was the one that made changes and I made absolutely no changes to his release. Only a date. I changed the date [ ]—and I entered that in ink so it would be noticed. I put in June the 30th, and that's all. It's the only

change. Other than that, the whole complete thing was done by Mr. Becker. I only updated it, the bottom half of the release that he sent, I attached it to the release since I wasn't the one putting in the pipes. And I have done absolutely nothing. Mr. Becker wrote all of that release.

MR. BECKER: What I'm hearing, Your Honor, is that she did retype the release—

MS. KINLEY: No, I never retyped it.

MR. BECKER: —because I never sent one with a blank in it for a date, number one. Number two, [omitted]

I was following the exact dictates of the Court's order when I sent the January 17th, 1997 letter to Mrs. Kinley with the attached release, which was prepared subsequent to your Order which was worded specifically, based upon what was discussed in this courtroom about past, present and future damages, giving up all claims as to Wenonah, its agents, employees, successors and assigns and we were very clear when we left here that day that that was going to be submitted, and that Mrs. Kinley was going to sign it. Transcript 4:7–5:25 (Feb. 25, 1997).

Mr. Becker prepared a "Hybrid Release" that both parties signed. The negotiations of the executed release were put on the record and are set forth extensively herein as needed. The release states, in relevant part:

> Specifically, Helen Kinley releases the Borough of Wenonah, its governmental officials, agents, employees, successors, and assigns, from any liability past, present and future for any alleged problems or damage which may be related to the drainage facility project.
>
> Helen Kinley shall receive water and sewer service according to an Agreement between the Borough of Wenonah, the Deptford Township Municipal Utilities Authority, and Helen Kinley, which service shall be provided to Helen Kinley in accordance with the Consent Order under Civil Action 92–3216(JHR) and the January 2 order of Judge Robert B. Kugler, United States Magistrate Judge.

Hybrid Release (Feb. 25, 1997).

At this point, construction of Drainage Facility No. 2 was to begin, and Ms. Kinley, having finally signed a release, was to receive water and sewer services from the borough.

On March 6, 1997, the court held a status conference to monitor the progress of the facility. At the conference, Plaintiff Cooper and the Borough of Wenonah unexpectedly expressed an interest in renegotiating the settlement of the damages portion of the case. The court obliged the parties, and they reached another agreement. The new settlement called for payment of a sum certain and changed the construction of the drainage facility yet again. But, instead of constructing a drainage facility, the Borough of Wenonah proposed to simply put rip rap and shrubbery on the plaintiff's land to disperse the flood water evenly over the soil ("Drainage Facility No. 3"). Ideally, the soil will absorb the water evenly and thereby prevent flooding and water damage to the plaintiff's property and home. Like the prior proposed facilities, Drainage Facility No. 3 must comport with the Soil and Erosion standards and all relevant federal and state laws. See Consent Order ¶ B (Sept. 27, 1993). On March 31, 1997, the case, having been finally resolved, was closed by an Order of Dismissal.

Before the case officially closed, Ms. Kinley notified the court that she wanted to rescind the Hybrid Release that she signed on February 25, 1997 and forgo receiving water and sewer services from the Borough of Wenonah. Ms. Kinley first noticed the court with her desire to rescind the release in a hand delivered letter to the court on March 26, 1997. Letter from Ms. Kinley to Hon. Robert B. Kugler (Mar. 26, 1997). Several months later, the court held another status conference. At the conference, Ms. Kinley reiterated her desire to rescind the Hybrid Release. See Transcript 28:21–29:18 (Jun. 12, 1997). She also broached the subject of getting counsel in this matter. The court directed Ms. Kinley to submit her moving papers, from her counsel or pro se, on or before June 30, 1997. Transcript 49:1, 50:23–51:3 (Jun. 12, 1997).

Ms. Kinley submitted several letters and an affidavit to the court on the issue of rescinding her release. Additionally, Isaac H. Green, Esquire, entered an appearance and sent a letter to the court on her behalf. Letter from Mr. Green to Hon. Robert B. Kugler (Jun. 30, 1997). In her various letters, Ms. Kinley states she wants to rescind the release because (1) she is concerned with the progress in "supplying water and sewer services" to her property, id.; (2) she is frustrated trying to get a status report from the Borough of Wenonah about the project's progress, id.; (3) she has been subjected to verbal abuse from Mr. Becker, id.; (4) she was never aware that a pump was to be installed on her property, letter from Ms. Kinley to Hon. Robert B. Kugler (Apr. 23, 1997); (5) she signed based upon the construction of Drainage Facility No. 2 which was subsequently changed by the settlement on March 6, 1997 to Drainage Facility No. 3, letter from Ms. Kinley to Hon. Robert Kugler (May 7, 1997); (6) she was told by the court to sign the release on February 25, 1997, Kinley Aff. ¶ 4; and (7) Wenonah has not complied with any court orders to build the drainage facility. Id. ¶¶ 5, 6.

In opposition to Ms. Kinley's motion, Wenonah argues that Ms. Kinley was fully aware of the terms of the release and signed the release under no misrepresentations, coer-

cion or duress. Letter to Judge Kugler from Mr. Becker 3 (Jun. 1, 1997). The borough further asserts that Ms. Kinley was aware of all elements of the release, that the release signed on February 25, 1997 was amended to her satisfaction, and that the delays in connecting Ms. Kinley to water and sewer services have been the result of Ms. Kinley changing the terms of the initial agreement from the installation of a pump on Ms. Kinley's property to a gravity-feed system. *Id.* at 2. Finally, Wenonah contends that construction of the drainage facility cannot begin until Ms. Cooper connects to the water and sewer line, and Ms. Cooper directed the borough to wait until this issue was resolved before commencing construction of the facility. *Id.* at 2.

## DISCUSSION

### PERMISSIVE INTERVENTION

▓ Before the court delves into the substantive issues, Ms. Kinley must be properly before the court. As such, the court *sua sponte* moves to allow Ms. Kinley to permissively intervene in the case for the purposes of her motion to rescind the release. Federal Rule of Civil Procedure 24(b) governs permissive intervention and states in relevant part:

> Upon timely application anyone may be permitted to intervene in an action: ... (2) when the applicant's claim or defense and the main action have a question of law or fact in common.

▓ The determination to allow intervention is left to the court's broad discretion. Fed.R.Civ.P. 24(b). The motion is timely because it is by the court. Additionally, there are common questions of fact. The issue of rescission is intricately linked to the success of the settlement of the underlying case. If Ms. Kinley is allowed to rescind her release the underlying case is not settled and the case will likely go to trial. Transcript 46:8–13 (Jun. 12, 1997) (COURT: The problem now becomes [that the] whole settlement of this case is dependent upon this question of [the] release and whether [Ms. Kinley] can rescind it). Accordingly, Ms. Kinley is hereby permitted to permissively intervene in this case for the limited purpose of requesting that the court rescind the release she

executed absolving the Borough of Wenonah from any liability and claims related to the construction of a drainage facility on Plaintiff Cooper's property.

### RELEASE

▓ A release is a writing which provides that a duty owed to the maker of a release is discharged immediately or upon the occurrence of a condition. RESTATEMENT (SECOND) OF CONTRACTS § 284. "The rules of interpretation that apply to contracts generally apply also to writings that purport to be releases." *Id.* at Comment C. Since the release represents a contract between Ms. Kinley and the Borough of Wenonah, contract principles determine the rights of the parties.

▓ While jurisdiction of this case is based on a federal question, the present motion to rescind the release is based in contract law. Absent federal requirements, the "laws of the several states ... shall be regarded as rules of decisions in civil actions ... in the federal courts." 19 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE, § 4520 at 637 (2d Ed.1996). "In construing matters of state law in pendent claims or in state law matters otherwise subsidiary to its federal question jurisdiction, a federal court exercising federal question jurisdiction, like a federal court sitting in diversity, is duty-bound to apply the law of the state in which it sits." *Vargas v. Calabrese,* 714 F.Supp. 714, 719 (D.N.J.1989) *aff'd in relevant part* 949 F.2d 665 (3d Cir.1991); *See also Van Houten Service Inc. v. Shell Oil Co.,* 417 F.Supp. 523, 527 (D.N.J.1975) *aff'd* 546 F.2d 421 (3d Cir.1976). Therefore, the release in question will be determined by the principles of New Jersey contract law.

### PRESUMPTIVE CONCLUSION OF VALIDITY

▓ In New Jersey, a signed release carries considerable weight.

> It is the general rule that where a party affixes his signature to a written instrument, **such as a release,** a conclusive presumption arises that he read, understood and assented to its terms and he will not

be heard to complain that he did not comprehend the effect of his act in the signing. *Peter W. Kero Inc. v. Terminal Construction Corp.*, 6 N.J. 361, 368, 78 A.2d 814, 817 (1951) (emphasis added); *See also Van Houten*, 417 F.Supp. at 527.

█ The records shows that Ms. Kinley read, understood and consented to the terms of the Hybrid Release, therefore the release is presumptively valid. Her questions, criticisms and comments suggest that she read and understood the terms of the release. The execution of the release after extensive discussions and negotiations concerning its scope suggests that she assented to its terms.

In her first objection, Ms. Kinley took exception to the use of the clause concerning Wenonah's liability where the borough was released from "any liability for any alleged problems that may **or may not** be related" to the proposed facility. The records follows.

MS. KINLEY: [omitted] [I]t said it may or may not be related. And I'm having some problems that are not related.

[omitted]

MS. KINLEY: Wait. What does that say right there? Release all employees, successors, government officials from any liability for any alleged problem that may or may not be related to the—

MR. BECKER: To the drainage facility.

[omitted]

COURT: So we can take that out, may not be related. So it may be related to [the] existing drainage facility and drainage facility which is to be constructed; okay? And then you'll sign it? If we take out the "may not" part?

Transcript 10:24–11:1, 11:24–12:18 (Feb. 25, 1997). Subsequently, the phrase "or may not" was removed from the release.

Ms. Kinley then objected to releasing claims of which she was not aware.

MS. KINLEY: Where it says I release and give up any and all claims and rights which I have against you. This releases all claims. I've got no problem with any of that. Including those of which I am not aware. I have a problem with that. How can I give up—how can I release something that I'm not aware of?

[omitted]

THE COURT: Well, let me explain to you what that means. In my opinion what that means is that there may not yet be a claim because the damage hasn't surfaced yet. That's all that means.

[omitted]

THE COURT: It hasn't what we call accrued yet, but you're giving it up anyway.

MS. KINLEY: Well, he says that further down in there. This release applies to claims resulting from anything that has happened up till now. I have no problem with that.

[omitted]

Transcript 12:22–13:13 (Jan. 25, 1997).

MS. KINLEY: Can we—this that I have not mentioned in this release, what about that? In this it says I'm not aware of and those not mentioned in the release. That's what it says here, not mentioned. If it's not mentioned, how can I release it[?]

THE COURT: Okay I see that, all right. I mean that's just superfluous. There's no reason why he can't take out that sentence.

*Id.* at 15:16–23.

This phrase was also taken out.

The court then gave Ms. Kinley time to review the release as amended with her comments.

MS. KINLEY: Yes, can I have a chance to look over it?

COURT: Sure, take your time.

Transcript 16:14–16 (Feb. 25, 1997).

After she reviewed the release she approached the court for clarification concerning those bound by the release. The patient court obliged her.

MS. KINLEY: I just want to—who is bound—what are they really saying, can you explain that to me?

THE COURT: Who is bound?

MS. KINLEY: Yes. See, I—

THE COURT: You're asking for legal advice.

MS. KINLEY: Is that what I'm doing?

THE COURT: That's right. All that means is that if you were to pass away, your children cannot sue on your behalf for anything arising out of the project.

That's all it means. [omitted]

Transcript 22:13–22 (Feb. 25, 1997).

Ms. Kinley's active participation and persistent questioning evinces that she was aware and understood the terms of the Hybrid Release and supports the presumptive conclusion that the release is valid. *Van Houten*, 417 F.Supp. at 527.

### EXCEPTIONS:

### FRAUD, MISREPRESENTATION, OVERREACHING, AND INCAPACITY

■ However, an exception to this presumptive conclusion arises when there is fraud, misrepresentation, overreaching by the releasee, incapacity of the releasor affecting his ability to understand the release, or any other equitable ground. *Van Houten*, 417 F.Supp. at 527 (citing *Raroha v. Earle Finance Corp., Inc.*, 47 N.J. 229, 234, 220 A.2d 107 (1966); *Wojcik v. Pollock*, 97 N.J.Super. 319, 324, 235 A.2d 58 (L.Div. 1967)). If a party to a contract is guilty of misrepresentation, the contract is voidable and the victim may rescind the contract. *Windsor Card Shops, Inc. v. Hallmark Cards, Inc.*, 957 F.Supp. 562, 568 fn. 8 (D.N.J.1997).

We do not believe that any exceptions to the presumptive conclusion apply to the facts of this case. In her moving papers, Ms. Kinley argues that she executed the release expecting that the Borough of Wenonah was going to construct Drainage Facility No. 2. It is true that when Ms. Kinley signed the Hybrid Release in February, 1997, the parties contemplated construction of Drainage Facility No. 2. Indeed, Drainage Facility No. 3 (the rip rap and shrubbery) was not contemplated until the final settlement in March, 1997, after Ms. Kinley signed the Hybrid Release in February, 1997. Even though this latest facility is different from the facility contemplated by Ms. Kinley at the time she signed the release, the change does not amount to fraud, misrepresentation or cause to rescind the release for at least two reasons.

First, at the time of the signing of the release by Ms. Kinley, on February 25, 1997, the court's order of January 17, 1997 was in effect. The January order stated that Drainage Facility No. 2 was to be constructed on Ms. Cooper's property. Court Order 1 (Jan. 17, 1997). At no point during the status conference was any other facility discussed. Transcript (Feb. 25, 1997). It is clear that all parties contemplated that Drainage Facility No. 2 was to be constructed at the time that Ms. Kinley signed the release. Therefore, there was no fraud or misrepresentation regarding the drainage facility.

Second, at the March 1997 conference Ms. Kinley's concern was that her earlier release remain valid, not be rescinded. Significantly, she wanted the court to ensure that she was still going to receive the water and sewer she now rebukes, notwithstanding the change in the facility.

MS. KINLEY: The agreement that [Ms. Cooper is] making doesn't affect the agreement that we had concerning water and sewer.

THE COURT: No, you're still going to be hooked up. The agreement remains in effect. That is that you and Ms. Cooper will be hooked up to the water and sewer line. I understand that they've already been out looking at your property, Mrs. Kinley?

MS. KINLEY: Yes.

Transcript 5:3–10 (Mar. 6, 1997).

At the hearing, Ms. Kinley recognized that the Hybrid Release was valid and did not challenge it. She did not view the change as an opportunity to rescind the release and forgo water and sewer but as a need to confirm that she was to still receive it from the borough.

To the extent that she went home to reflect on the change and submit argument in her papers, the court remains unpersuaded. Ms. Kinley argues that Drainage Facility No.

constructed on Ms. Cooper's property would have protected her property from flood damage. Letter from Ms. Kinley to Hon. Robert B. Kugler (May 7, 1997). As the court stated above, Drainage Facility No. 3 must, like the previous facilities, comply with federal, state and local law, and be acceptable to and approved by the New Jersey Soil and Erosion and Sediment Control Division. Further, the facility is subject to the approval of the plaintiff's engineer. If the facility complies with the law and receives the plaintiff's engineer's approval, it must necessarily meet its stated purpose: to avoid or minimize the flood damage on the plaintiff's property. As the court understands, Ms. Kinley contends her property may receive residual water damage from the flow of water through Plaintiff Cooper's property.[4] As such, any facility that properly minimizes the flooding on the plaintiff's property will necessarily minimize the flooding to Ms. Kinley's property. The law of physics and common sense demands such a result. As such, Ms. Kinley's expectation that at the time of the release she would receive protection from the then contemplated facility is undisturbed.

In her papers, Ms. Kinley also asserts that she was not aware that a pump was to be installed on her property and that she would not have signed the release had she known of the pump. The Borough of Wenonah asserts that the pump was understood in all discussions concerning the connection to water and sewer. The court agrees. In fact, Ms. Kinley herself discussed that a pump would be needed to connect her property,to water and sewer. Ms. Kinley addressed the physical connection to water and sewer in exchange for her release at a motion hearing prior to her signing the release as early as December of last year:

MS. KINLEY: I want to make sure that they're going to use the right pipes and everything will be what it should be with the pump and everything that's needed

and necessary that I don't have problems with this line. [omitted]

Transcript 45:4–7 (Dec. 30, 1996).

Surprisingly, in May, 1997, Ms. Kinley asserted that she was not aware of the need for the installation of a pump on her property and requested a gravitational feed instead. Transcript 9–15 (May 1, 1997). In any case, Wenonah acquiesced to Ms. Kinley's request and made provisions to connect water and sewer through a gravitational pull into the Township of Deptford, a method that would not require a pump to be installed on Ms. Kinley's property. *Id.* Thus, the issue of a pump is irrelevant. Nevertheless, the court finds there was no fraud or misrepresentation regarding the use of a pump given Ms. Kinley's earlier knowledge of the use of the pump.

In addition, the court finds that the borough did not overreach because there is a fair exchange for the changes in the Hybrid Release from the releases previously submitted by Mr. Becker to Ms. Kinley for her execution. Initially, the borough was to extend its water and sewer to Ms. Kinley's property line and she was to bear the cost of connection to her home by way of a pump. *See* Clarification Order (Jan. 2, 1997). Ms. Kinley decided that she did not want a pump, and the borough agreed to a gravity feed downhill into the Township of Deptford. Mr. Becker clarified the issue for the court in February 25, 1997. As to the changes Ms. Kinley made in her Amended Release, Mr. Becker stated, "that's inappropriate because obviously that was in regard to the settlement before what we were contemplating at that time. [Ms Kinley] refused to sign that, and that was for supply[ing] water and sewer up top and [Ms. Kinley] run [the lateral] down. [omitted] Since that time we've talked about [ ] spending 25,000 [dollars] to run it down, [gravitational pull into the Township of Deptford]. Transcript 6:12–17 (Jan. 25, 1997)[W]e agreed to go ahead and hook her up to water and sewer and bear the entire

4. MS. KINLEY: I do not want water and sewer because the plan that was submitted at the time that—the way that this was going to be handled is completely different that what it is now. And that meant my property was protected. But the settlement that [Ms. Cooper] has made and Wenonah has gone along with, that's fine, but that leaves me out. My property is the one that's being inundated with water.
Transcript 28:21–29:3 (Jun. 12, 1997)

cost to be done with this matter." Transcript 7:8–11 (Jan. 25, 1997). Obviously, since Ms. Kinley is receiving a gravitational pull, she need not bear the cost of the lateral for the pump. So, the changes of (1) explicitly absolving the borough's officials, agents, employees, successors, and assigns and (2) releasing past, present and future claims in the Hybrid Release (which were not in the releases previously submitted to Ms. Kinley for execution) are supported by the consideration that she will now receive her water and sewer without cost.[5] As such, the court finds no overreaching on the part of the borough.

Lastly, the exception of incapacity does not apply. Ms. Kinley has handled herself intelligently throughout the proceedings. That the case is still on the federal docket, having been filed in 1992, is testimony to her tenacity, diligence and capacity to represent herself in court. The court record is replete with perceptive, sometimes piercing, questions, comments and colloquy by Ms. Kinley as she protected her interest and guarded her rights. Her many papers, motions and other legal documents are well presented, organized, understandable and straightforward. Ms. Kinley's ability to meaningfully participate in this litigation militates against any suggestion that she is incapacitated. Indeed, to her credit she does not claim that she is.

However, Ms. Kinley does claim that she was ordered by the court to sign the Hybrid Release she executed on February 25, 1997. This argument is without merit. The court order that Ms. Kinley claims directed her to sign a release was entered on January 17, 1997. It states in relevant part that "the Borough of Wenonah shall deliver and Ms. Kinley, plaintiff's mother, shall execute a Release within fourteen (14) days...." Court Order 2 (Jan. 17, 1997). The court order was made pursuant to the Consent Order which specifically linked the signing of the release to her receipt of water and sewer. Pursuant to the Consent Order "[i]t [was] understood that such extension of water service ... [would] be immediately available to the plain-

tiff's mother upon conveyance of a release from the plaintiff's mother releasing the Borough of Wenonah from any liability for any alleged problems that may or may not be related to the proposed drainage facility to be constructed on the plaintiff's property." Consent Order ¶ C. In the court proceeding on December 30, 1996, the court read this very provision to Ms. Kinley in open court. See Transcript 33:2–7 (Dec. 30, 1997). After reading the provision, the court stated that "clearly the provision of the water and sewer[ ] is contingent upon signing th[e] release.... [C]learly the parties agreed to that." Transcript 33:9–13 (Dec. 30, 1996). Thus, the court order of January 17, 1997 was pursuant to the Consent Order where Ms. Kinley agreed that she would receive water and sewer if she released all claims against the Borough of Wenonah.

Furthermore, when Ms. Kinley intimated that she signed the release at the court's direction at a previous proceeding, the court set the record straight.

MS. KINLEY: I signed too, when the court gave me an Order, I followed the Court Orders.

THE COURT: I didn't order you to sign that release. I simply told you if you wanted to agree to the deal and have water and sewer, you'd have to sign the release in order to get those things.

[omitted]

THE COURT: Just to be clear, I didn't force you to sign the release.

MS. KINLEY: I didn't say that, Your Honor, no. I signed it. But had I had representation, had I had a lawyer at the time, I'm pretty sure I wouldn't have signed the release. [omitted].

Transcript 34:7–19 (Jun. 12, 1997).

Ms. Kinley admits to signing the release on her own volition after she assented to the changes discussed at the status conference on February 25, 1997. She signed the release in exchange for water and sewer services, not at the court's direction.

5. Alternatively, the court notes that as to the change of past future and present claims, Mr. Becker simply reflected language in an order submitted by this court, and therefore was not overreaching when he submitted the 1997 Release with the change. See Clarification Order 4 (Jan. 2, 1997).

In conclusion, the court finds that no exceptions to the presumption of a valid release apply to this case.

## EQUITABLE GROUNDS

 Thus, the question remains as to whether there are any other equitable grounds for rescinding the release. *Van Houten,* 417 F.Supp. at 527. Under general principles of contract law, rescission is an equitable remedy and only available in limited circumstances. *Hilton Hotels Corp. v. Piper Co.,* 214 N.J.Super. 328, 336, 519 A.2d 368, 372 (1986). However, a material breach that concerns the essence of a contract may justify the remedy of rescission. *Medivox Productions, Inc. v. Hoffmann–LaRoche, Inc.,* 107 N.J.Super. 47, 75, 256 A.2d 803, 818 (1969).

Ms. Kinley asserts that the changes in the proposed drainage facility justify her rescission. In essence, Ms. Kinley asserts that the differences are material to the contract. The court disagrees. First of all, Ms. Kinley's approval of the facility was not necessary. In the many orders entered by the court over the years, there is no requirement that Mrs. Kinley must approve of the type of drainage facility to be constructed. *See* Consent Order (Sept. 27, 1993); Court Order (Feb. 14, 1995); Clarification Order (Jan. 2, 1997); Court Order (Jan. 17, 1997).

Furthermore, Drainage Facility No. 3, like the previous facility relied upon by Ms. Kinley, must comport with the relevant federal, state and local laws. Moreover, as the court stated on the record, construction of the facility will not disturb Ms. Kinley's right to receive water and sewer pursuant to the Hybrid Release. Transcript 5:3–7 (Mar. 6, 1997) (MS. KINLEY: The agreement that [Ms. Cooper is] making doesn't affect the agreement we had concerning water and sewer. COURT: You're still going to be hooked up. The [release] remains in effect.) Therefore, the court finds no merit in Ms. Kinley's argument that the differences in the drainage facilities justify rescission of her release, and there is no material breach to justify equitable grounds for rescinding the release.

Ms. Kinley also alleges that the Borough of Wenonah has consistently disregarded the orders of this court regarding the construction of the drainage facility. Thus, Ms. Kinley asserts that this demonstrates a lack of good faith in bargaining on the borough's part. This case has been on the federal docket since 1992. The court recognizes that this litigation has taken up many years of Ms. Kinley's and Ms. Cooper's lives. The court also notes that requirements on both sides of the dispute have made the settlement of the final issue difficult and time consuming. At times the process became trying and frustrating to all the parties involved. But, the parties have been amenable lately. As such, there is no need to rehash the prior indiscretions of counsel. Suffice it to say that neither the borough nor Mr. Becker has, at any time, conducted themselves so egregiously that the court can now justify rescinding the release.

## CIVIL RIGHTS CLAIMS

There remains a final analysis to determine the validity of the release. The remedy of rescission would be justified if the waiver of federal claims is held invalid. *See Cirillo v. Arco Chemical Co.,* 862 F.2d 448, 451–54 (3d Cir.1988). A general release, not restricted by its terms to particular claims and demands, ordinarily covers all claims and demands due at the time of execution. *Van Houten,* 417 F.Supp. at 530. Because the release did not by its terms state the particular claims released, the release Ms. Kinley signed must be analyzed to determine if all claims, including all potential civil rights claims against the Borough of Wenonah, were released.

 The Kinley release states in relevant part that "Helen Kinley releases the Borough of Wenonah, from any liability, past present or future for any alleged problems or damage which may be related to the drainage facility project." Hybrid Release (Feb. 25, 1997). This would include civil rights claims that may arise. Thus, the terms of the release include federal civil rights claims and must be scrutinized under the Third Circuit's requirements.

In the Third Circuit, a "totality of the circumstances" test is used to determine the validity of a release with respect to claims that arise under federal law, which are subject to more scrutiny than state substantive law contract principles. *Cirillo*, 862 F.2d at 451; *Ponzoni v. Kraft General Foods, Inc.*, 774 F.Supp. 299, 309, fn. 14 (D.N.J.1991) *aff'd* 968 F.2d 14 (3d Cir.1992) citing *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 524 (3d Cir.1988).

First, a waiver of federal rights must be knowing and willful to be valid. *Ponzoni*, 774 F.Supp. at 309; *See also Coventry*, 856 F.2d at 518. The factors to consider in analyzing the "totality of circumstances" include, but are not limited to: (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation of the release before signing it; (4) whether plaintiff knew or should have known her rights upon execution of the release before signing it; (5) whether plaintiff was encouraged to seek, or in fact received, benefit of counsel; (6) whether there was opportunity for negotiation of the terms of the agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled to by law. *Cirillo*, 862 F.2d at 451.

In *Ponzoni*, a former employee brought an age discrimination suit against the employer, and the employer claimed that employee had signed a valid and enforceable release. There, the document released "all claims and demands of every name type act and nature arising or existing by reason of any known or unknown, past present or future act or inaction whatsoever." *Ponzoni*, 774 F.Supp. at 309–10. The court held this release to be sufficiently clear as to the scope of claims. *Id.* The court also held that the education requirements were a minimal threshold. *Id.* at 310. Additionally, two weeks deliberation was held to be sufficient. *Id.* In *Ponzoni*, the plaintiff discussed his rights with his employer under the ADEA, and was held to be aware of his rights. *Id.* at 311. The court also held that the focus is whether consultation with a lawyer was encouraged orally or in writing, not whether the releasor in fact received counsel. *Id.* at 312. In *Cirillo*, the court explained that opportunity for negotiation of a release is a strong indication that the release is knowing and voluntary. *Cirillo*, 862 F.2d at 454 n. 4.

In this case, "any liability, past present or future for any alleged problems or damage which may be related to the drainage facility project" is similarly unambiguous and specific. Ms. Kinley's objection to this language is adequate commentary that she fully understood its implications. Like the court in *Ponzoni*, we believe the Hybrid Release is sufficiently clear as to the scope of the claims.

While Ms. Kinley is not an attorney, she has commendably represented herself throughout the proceedings, and as with all *pro se* litigants, the court is mindful of her status.

As for the third factor, Ms. Kinley was given adequate time to deliberate the release before signing it. She had two weeks in which to sign the release Mr. Becker sent her pursuant to the order of January 17, 1997, which she executed with her changes. At the hearing during which she signed the release, Ms. Kinley pondered over the release after it was amended to include her comments, and sought more clarification from the court regarding its terms.

As to whether Ms. Kinley knew or should have known her rights before signing the release, she knew that she must sign a release before receiving water and sewer services since the Consent Order was entered in 1993. Thus, for four years she knew that she must sign a release before receiving water and sewer services. If she did not know of her rights upon executing the release, and the court believes she did, she certainly should have known.

The fifth factor is also met. Ms. Kinley was encouraged to obtain counsel. At the status conference in June 1997, after she reiterated that she wanted to rescind her release, the issue of obtaining counsel was addressed.

THE COURT: Ms. Kinley, I thought that's why we postponed it to today, so that you could get yourself a lawyer.

MS. KINLEY: No it wasn't—I was waiting to hear what you had to say. When you said you were going to make a decision on the 23rd, that's what I said.

THE COURT: But didn't we talk about you want[ing] to talk to a lawyer before?

MS. KINLEY: I said I think that's what I need, but I just—

THE COURT: Didn't I encourage you and urge you to go see a lawyer?

MS. KINLEY: Yes, but I didn't.

Transcript 45:18–46:4 (Jun. 12, 1997). Thus, Ms. Kinley was advised, indeed encouraged, to seek counsel. In fact, the court postponed deciding this issue for the sole purpose of allowing her to seek counsel. (Transcript 44:5–6 (May 1, 1997) COURT: Go talk to a lawyer. And then I'll see you back here). Thereafter, Isaac H. Green, Esquire sent a letter to the court on her behalf. Counsel's letter summarizes the facts and issues now before the court. As such, in addition to encouraging Ms. Kinley to seek counsel, the court believes she actually had the benefit of counsel.

Ms. Kinley had extensive opportunity to negotiate the terms of the release and did so. Again, we note that Ms. Kinley questioned the provision in the release absolving the borough from liability of which she was not aware and which was not related to the drainage facility. In light of her questioning, these provisions were removed from the Hybrid Release. She clearly negotiated the terms.

The last *Ponzoni* factor, is not readily applicable to these facts because Ms. Kinley is not legally entitled to receive water and sewer services from the Borough of Wenonah. However, Mr. Becker stated the cost for her connection at Twenty Five Thousand Dollars ($25,000). *See* Transcript 6:17 (Feb. 25, 1997). Based on the record before the court it is difficult to determine whether this value exceeds what the plaintiff's claims are worth. While we cannot determine whether her claims exceed $25,000, assuming his estimate is true, she is getting at least that much in the value of the water and sewer connection. We believe that the value of her water and sewer services is substantial. In any case, this is but one of the many factors the court must consider, and all of the other factors have been met.

## CONCLUSION

Accordingly, the court finds that there is no fraud, misrepresentation, mental incapacity, overreaching or other equitable grounds for allowing Ms. Kinley to rescind the release. Furthermore, under closer scrutiny, the court finds that Ms. Kinley does not meet the factors such that the court should allow her to rescind the release as to her civil rights claims. The motion to Rescind the Release is **DENIED**.

The accompanying order shall enter today.

### ORDER

THIS MATTER having been brought upon motion before the Court by BRENDA COOPER, *PRO SE* PLAINTIFF, for an order reopening this matter; and by the Court for an order allowing HELEN KINLEY to permissively intervene pursuant to Fed. R.Civ.P. 24(b) for the limited purpose of moving to rescind the release; and upon motion before the court by HELEN KINLEY, for an order rescinding the release she executed in open court on February 25, 1997; and the Court having considered the moving papers and the opposition thereto; and having heard the arguments of the parties on June 12, 1997; and for good cause shown herein and in the accompanying Opinion;

IT IS this 29th day of August, 1997 hereby

**ORDERED** that the plaintiff's motion to reopen is **DENIED**; it is

**FURTHER ORDERED** that Ms. Kinley is permitted to intervene in this matter for the purpose of moving to rescind the release; it is

**FURTHER ORDERED** that Ms. Kinley's motion to rescind the release is **DENIED**.